IN THE DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MARK S. SMITH and GLENN D. WONG,<br><br>    Defendants. | Case No.: 17-cr-00020<br><br>**ORDER DECLARING MISTRIAL** |

    Before the Court are the Government's and defendants' motions for reconsideration. The Government seeks reconsideration of the Court's order that it must redact David Lujan's name from all exhibits that it intends to introduce into evidence, and further argues in its opposition to defendant's motion for reconsideration that the Court must disqualify Mr. Lujan as counsel and declare a mistrial. (ECF Nos. 161, 165.) Defendants seek reconsideration of the Court's denial of their motion for a mistrial on other grounds. (ECF Nos. 161, 171.)

    Also before the Court are the Government's motion for mistrial on yet another ground, and defendant Smith's motion to strike the statements of IRS Special Agents Todd Peterson and Patrick Ernst. (Pl's. Mot. for Mistrial, ECF No. 160; Def's. Mot. to Strike, ECF No. 167.)

For the reasons set forth below, the Court grants the Government's motion for reconsideration and declares a mistrial out of manifest necessity. The Court denies the remaining motions as moot.

I.   **Background**

The following recitation of the history of how this case has proceeded is drawn from the Court's review of the record, including all filings on the docket and audio of the trial proceedings, as well as its own recollection. Although the parties have each included background in their briefs, the record reflects that their recollections are incomplete or incorrect.

On September 13, 2017, the parties presented their opening statements to the Court and the jury. During his opening statement, defendant Smith's counsel David Lujan showed jurors a HUD document from Jesse Wu, dated May 2, 2013, with a handwritten comment "RACIST" next to the final paragraph on the third page. (Pl's. Mot. for Mistrial 2; HUD Doc. 3, ECF No. 160-1.) The document was enlarged when shown to the jurors. (*See* Lujan Decl. 4, ECF No. 166-1.)

The Government objected to presentation of the marked-up document, and brought it to sidebar. The Court heard argument from the parties on the objection, and the Government asked for a curative jury instruction. Then, the Court sustained the objection by ordering Mr. Lujan to cover the handwritten comments before showing the document again to the jury. (*See* Lujan Decl. 5.) No further objections were made.

On September 14, 2017, the Government sought to admit into evidence Exhibit GE18a, pages 713-714, which is a set of emails, dated March 27-29, 2012, between defendant Smith and several GHURA employees. The emails referenced defense counsel David Lujan's prior conflict of interest as GHURA legal counsel. Wong's defense counsel James Maher requested a sidebar. At sidebar, Mr.

Lujan argued that the Government misstated that he had stipulated to admission of the exhibit, and that he would stipulate only if the Government redacted his name and references to his family. The Government agreed to withdraw the statement that he stipulated to the exhibit, and informed the Court that it intended to admit a number of other exhibits referencing Mr. Lujan.

Given the scope of the issue, the Court excused the jury and then heard argument from counsel. Mr. Lujan argued that the Government previously stipulated in writing to redacting his name from all their exhibits. Mr. Lujan produced a signed but unfiled stipulation dated September 11, 2017, that addressed admissible evidence. Mr. Lujan indicated this stipulation was the result of their agreement regarding redaction and was memorialized in a separate letter. The Court deferred ruling on the matter due to the possibility that the stipulation may bind the Government from using unredacted exhibits, and allowed Mr. Lujan and Ms. David time to find their letters memorializing the other stipulation.

Later that afternoon, and after the jury was dismissed for the day, the Court returned to the issue with the parties. Defense counsels offered emails and letters between them and counsel for the Government, stating these documents showed the parties agreed to redact Mr. Lujan's name. The exchange of communication showed that Mr. Lujan informed the Government on September 1 that he would not agree to stipulate to certain exhibits because they included reference to him and his family, and the Government agreed to remove those exhibits from the proposed stipulation.

Mr. Lujan argued that because the Government agreed to remove the exhibits from the proposed stipulation, this meant that the Government agreed to redact all references to his name. After reviewing the letters, he then argued to the Court that it was an oral agreement prior to the parties signing the stipulation. The Government argued that it believed its agreement to remove the exhibits

3

from the proposed stipulation indicated only that it must seek to admit those exhibits at trial over defendants' objections, not that it agreed to redact Mr. Lujan's name.

The Court then asked Mr. Lujan if he were not counsel of record right now, what would be his argument that the March 2012 emails would be inadmissible. Mr. Lujan responded that another attorney "would not be able to make the arguments I am making," and that the exhibit directly affected his credibility as Smith's attorney, which was why redaction was the appropriate remedy.

The Court then raised the Government's motion to disqualify Mr. Lujan as counsel, which was filed on April 7, 2017, and denied in May 2017. (*See* ECF No. 30.) The Court reminded the parties that the Court was required to engage in "a balancing act" to protect Smith's right to counsel of his choice and address any actual or potential conflict that would indicate Mr. Lujan should recuse or the Court should disqualify him. The Court previously denied the motion to disqualify Mr. Lujan because the Government failed to put forth any specific evidence and relied on mere speculation that Mr. Lujan's representation of Smith would be compromised. (*See* ECF No. 78.)

After reviewing the prior proceedings on the motion to disqualify, the Court said, "I'm not going to allow that choice [of counsel] to now be the shield against any admissible evidence, admissible against him personally because Mr. Lujan was the choice of counsel. And if the evidence is admissible against Mr. Smith, and then it references Mr. Lujan, this was with clear notice that it was advisable, at least as argued by the Government, that Mr. Lujan should step aside and have separate counsel represent Mr. Smith. Mr. Smith, as I recall too, I placed him under oath, asked directly whether he in fact wished to proceed with Mr. Lujan, and he agreed or acknowledged that his counsel of choice is Mr. Lujan."

4

The Court then overruled the objection to admission of Exhibit GE18a, pages 713-714, because it included a statement by Smith in response to notice to him about the conflict, and informed defense counsels that they could cross-examine the witness as to the document's accuracy.

Mr. Lujan responded that he did not have the emails at issue at the time the motion to disqualify was filed and argued, and therefore it was incorrect for the Court to say he and Smith were aware of the emails. The Court clarified that it was not referencing the specific emails, but that Mr. Lujan had an opportunity to withdraw at the time he was considering the Government's motion to disqualify. Additionally, the Court reminded Mr. Lujan, "everybody has an ongoing duty to recognize that if there is a problem, there is a need to either revisit that decision that was committed." Thus, although the Court had previously denied the motion to disqualify, "If during the course of discovery you felt that there was a reason to step aside, that's for you to decide."

The Court then found Exhibit GE18a, pages 713-714, admissible against Mr. Smith.

On September 15, 2017, the Government continued its direct examination of Ms. Taitano, and directed her attention to Exhibit GE18a, pages 713-714. The witness was given a hard copy, and at the request of defense counsel James Maher, the Court stated the image would be displayed on the monitors for the Court and attorneys only. Approximately one minute after the Court's statement, Mr. Lujan asked for clarification that the exhibit had not been shown to the jury, and it was then determined that Court staff had mistakenly put the image on the screens in front of the jury. It was immediately taken down.

Mr. Lujan indicated he had further objections to admission of the exhibit. At sidebar, Mr. Lujan said that evidence pertaining to his conflict was a direct infringement on the attorney-client

5

relationship and was designed to undermine his relationship with Smith and his credibility with the jury in violation of the Sixth Amendment. Mr. Lujan argued the Government was also attempting to reopen the motion to disqualify. Mr. Maher then said that had Mr. Wong known of the evidence, he would have asked to be severed and called Mr. Lujan as a witness. Mr. Lujan asked for a recess to contemplate withdrawing as counsel. The Court stated its inclination was to admit the evidence and granted the request for a recess.

After the recess, Mr. Lujan argued that because the jury saw the exhibit at the behest of the Government, whether intentionally or not, and the jury read about his conflict of interest, which was the same as Smith's alleged conflict, his ability to serve as effective counsel was compromised and the Court should grant a mistrial. Mr. Maher joined the motion for a mistrial on the grounds that Mr. Wong was prejudiced by the "taint" on Mr. Lujan's credibility.

The Court permitted the parties to present their arguments on the motion for a mistrial and admissibility of Exhibit GE18a, pages 713-714. Then, the Court asked if the exhibit could be put back up to determine whether the full page or part of the page had been shown, as full pages were difficult to read on the screen and were blurry. The Court then denied the motion for a mistrial at that time because it recalled the exhibit's image was blurry and exposure would therefore have been minimal, and would confirm this recollection with the digital image.

Mr. Lujan again argued that his credibility with the jury had been compromised, and requested a recess of several days to continue conferring with Smith about whether he should self-recuse.

The parties then viewed the screens in the jury box with the exhibit displayed, and the parties agreed that Mr. Lujan's name was visible in one monitor that was directed towards two jurors outside

6

the box. The Court again suggested polling the jury. Mr. Lujan requested that a poll not be taken, as that would draw more attention to the issue.

With respect to Mr. Lujan's request for a delay to address issues that may arise from the Government's exhibits that have his name and reference his conflict as GHURA's legal counsel, the Court determined that the appropriate focus was on why the proposed exhibits were relevant. The Government had previously indicated the emails and similar exhibits were relevant for proving that Smith knew that former legal counsel for GHURA had a conflict and sought a waiver, and these exhibits show that Smith was put on notice that he should and could follow the same procedure. Based on this argument, the Court determined that the identity of the former legal counsel was not relevant because a redacted version would be as probative, and ordered the Government to redact Mr. Lujan's name from the exhibits. The Court stated that this solution would allow it to "administer the proceeding fairly and eliminate any unjustifiable expense and delay, while still promoting the development of the evidence," and would also "prevent undue delay, a waste of time, or presentation of cumulative evidence."

### *Defendant's Motion for Reconsideration*

On September 19, 2017, defendant Smith filed a motion for reconsideration of the Court's denial of the motion for a mistrial. (Mot. for Reconsideration, ECF No. 161.) Defendants argue that the Government has violated defendant Smith's Fifth and Sixth Amendment rights by intentionally attempting to interfere with his relationship with his attorney, David Lujan. (*Id*. at 7-11.) Specifically, the Government sought to disqualify Mr. Lujan, and after the Court denied the motion to disqualify, has "repeatedly sought to introduce exhibits which were as irrelevant as the Government's prior

7

motives to declare counsel for Defendant a witness in this matter." (*Id*. at 8.) Further, the Government "attempted, in open court, to deny that the parties compromised on the admission of the relevant exhibits" by redacting Mr. Lujan's name from all exhibits. (*Id*.) In addition, the Government "published the March 2012 Email to the jury, prior to argument on its admissibility, without any redaction of references to counsel for Defendant, and prior to any order by this Court admitting the same." (*Id*. at 9.)

This conduct, defendants argue, was designed to "create a conflict of interest for counsel for Defendant, requiring his withdrawal," and denying defendant his Sixth Amendment right to effective assistance of counsel and choice of counsel. (*Id*.) Further, because defendant was prejudiced through the interference with his attorney-client relationship, and the Government intentionally sought to do so to gain an unfair advantage at trial, defendant's Fifth Amendment due process rights have been violated, justifying a mistrial. (*Id*. at 10-11.)

In its response in opposition, the Government argues that it did not publish the March 2012 emails to the jury and did not agree to redact Mr. Lujan's name from all exhibits prior to the Court's order that it do so. (Pl's. Resp. 1-3, ECF No. 165.) The Government further argues that Mr. Lujan has an actual conflict of interest in his continued representation of Smith and should be disqualified or allowed to withdraw, and the Court should then declare a mistrial. (*Id*. at 3-5.)

*Government's Motion for Reconsideration*

The Government filed a motion for reconsideration of the ruling that it must redact Mr. Lujan's name, arguing that the jury would find out the redacted name was Mr. Lujan. It argued that at least one anticipated defense witness, Anthony Perez, was Mr. Lujan's former associate during the period

8

Mr. Lujan represented GHURA, and the Government intends to cross-examine him about his relationship with Mr. Lujan and knowledge of Mr. Lujan's conflict of interest. (Pl's. Mot. for Reconsideration, ECF No. 159.)

*Government's Motion for Mistrial*

The Government has also filed a separate motion for a mistrial on other grounds, arguing that manifest necessity exists to justify a mistrial because Mr. Lujan showed the jurors an enlarged HUD document with the comment "RACIST" that he had handwritten on the side of it. (Pl's. Mot. for Mistrial, ECF No. 160.) In support of the motion, the Government has attached the affidavits of IRS Special Agents Todd Peterson and Patrick Ernst.

*Defendant Smith's Motion to Strike*

In response to the Government's motion for a mistrial, defendant Smith filed a motion to strike the affidavits of the IRS Special Agents. (Def's. Mot. to Strike, ECF No. 167.) Defendant argues that the affidavits do not comply with the statutory requirements, contain inadmissible hearsay, and are based on not based on personal knowledge. (*Id*.)

*September 21, 2017 Hearing on the Motions*

The Court held a hearing on the motions for a mistrial on September 21, 2017. First, the Court heard argument on the Government's motion for a mistrial on the basis of Mr. Lujan's use of the word "racist" on a document. After hearing from the parties, the Court indicated that it was inclined to deny the motion regardless of whether the IRS Special Agents' affidavits were considered.

During argument on defendants' motion for reconsideration, Mr. Lujan indicated that his representation of Smith had been compromised by the conduct of the Government. In addition to the

9

arguments set forth in the motion for reconsideration, he also referenced several exhibits the Government sought to introduce and testimony the Government would seek to elicit from his former business associate, Anthony Perez. Mr. Lujan argued that these exhibits and testimony that addressed his conflict of interest would undermine his credibility with the jury and thereby negatively affect his client.

Mr. Perez's involvement in creating a conflict for Mr. Lujan was first brought to the Court's attention in the Government's motion for reconsideration, and the Court indicated that the two motions for reconsideration were therefore related, and requested the Government argue its motion. The Government argued that the redactions unfairly limited its trial strategy because it wanted to contrast the behavior of Mr. Lujan, which the Government said was exactly what Smith was supposed to do, with what Smith actually did. Further, the Government indicated that the redactions were ineffective because witnesses may inadvertently disclose Mr. Lujan's name, and the cross-examination of Mr. Perez would expose the former GHURA legal counsel as Mr. Lujan. Finally, the Government agreed with Mr. Lujan that admitting all of the unredacted exhibits to the jury created a conflict of interest for Mr. Lujan, and requested that he be disqualified and a mistrial declared.

The Court then took the motions under advisement.

**II.     Legal Standard**

The Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration, but "numerous circuit courts have held that motions for reconsideration may be filed in criminal cases." *United States v. Krug*, Case No. 09-cr-01148, 2013 WL 12216365, at *2 (C.D. Cal. Feb. 4, 2013) (quoting *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005)).

"Motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings," which are the standards under Fed. R. Civ. P. 59(e) and 60(b). *United States v. Feathers*, Case No. 14-cr-00531, 2017 WL 783947, at *2 (N.D. Cal. Mar. 1, 2017) (quoting *United States v. Mendez*, Case No. 07-cr-00011, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008)).

Fed. R. Civ. P. 59(e) permits a court to alter or amend an entry of judgment "on any of four grounds: (1) a manifest error of law or fact upon which the judgment is based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; and (4) an intervening change in controlling law." *United States v. Motta*, Case No. 06-cr-00080, 2012 WL 6569284, at *2 (D. Haw. Dec. 17, 2012) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999).

Fed. R. Civ. P. 60(b) permits relief from final judgments, orders, or proceedings on any of the following six grounds:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

**III. Analysis**

The Court will first address the Government's motion for reconsideration and request for a mistrial on the basis of Mr. Lujan's conflict of interest. It will then address defendants' motion for

11

reconsideration of the denial of his request for a mistrial.

### A. *Government's Motion for Reconsideration and Request for Mistrial*

The Government requests that the Court reconsider its order that it redact all references to Mr. Lujan's name, and argues that Mr. Lujan has a conflict of interest that warrants disqualification and mistrial. (ECF Nos. 159, 165.)

#### i. **Redaction of Documents**

The Court ordered that the Government remove all references to Mr. Lujan's name in exhibits, and not refer to him by name when attempting to show that Smith knew he might have a conflict of interest as GHURA legal counsel based on his awareness of Mr. Lujan's conflict.

Since this Court's ruling, the Government has brought to the Court's attention that the defense intends to call Anthony Perez as an expert witness to testify about Smith's alleged conflict of interest, and that Mr. Perez is expected to testify that Smith did not have a conflict of interest. Mr. Perez worked with Mr. Lujan while the firm was GHURA's legal counsel, and at the time Mr. Lujan disclosed he had a conflict of interest, sought and was denied a waiver of the conflict, and decided to withdraw as legal counsel. The Government argues that it has a right to cross-examine Mr. Perez as to his relationship with Mr. Lujan and his knowledge of the circumstances that led Mr. Lujan to recuse himself as GHURA legal counsel.

"Adequate cross-examination entails not only the right 'to ask [the witness] whether he was biased,' but also the right 'to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial.'" *Hayes v. Ayers*, 632 F.3d 500, 518 (9th Cir. 2011) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). In this case,

any bias in favor of Smith that Mr. Perez has from his prior work relationship with Mr. Lujan is relevant to the credibility of his expert opinion. Additionally, Mr. Perez's knowledge, if any, of the circumstances of Mr. Lujan's conflict as GHURA legal counsel would also be highly relevant as to the credibility of his expected opinion that Smith did not have a conflict in circumstances similar to Mr. Lujan's. Thus, the Court agrees that Mr. Lujan's identity as former legal counsel will inevitably be revealed to the jury at trial and it would be unjust to prohibit the Government from raising this issue on cross-examination. Accordingly, the Government's motion for reconsideration as to the redaction is granted.

### ii. Disqualification of Attorney Lujan

The Government next argues that Mr. Lujan has a conflict of interest as Smith's attorney and should be disqualified.

"The Sixth Amendment's right to counsel encompasses two distinct rights: a right to adequate representation and a right to choose one's own counsel." *United States v. Brown*, 785 F.3d 1337, 1343 (9th Cir. 2015) (quoting *United States v. Rivera-Corona*, 618 F.3d 976, 979 (9th Cir. 2010)). With respect to adequate representation, the Sixth Amendment guarantees a "right to conflict-free counsel." *Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). This right is violated if a defendant can show either that "(1) in spite of an objection, the trial court failed to allow him the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial, or (2) that an actual conflict of interest existed." *Id*. An actual conflict is "a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). To determine whether a conflict exists, a court "must assess the

13

nature and extent of the conflict and whether that conflict deprived the defendant of representation guaranteed by the Sixth Amendment." *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005).

With respect to the right to counsel of one's choice, when counsel is retained, "the denial of this right does not depend on the quality of the representation received," and generally, a defendant "may have the counsel of his choice unless a contrary result is compelled by purposes inherent in the fair, efficient and orderly administration of justice." *Brown*, 785 F.3d at 1344 (internal quotations and citations omitted).

In this case, the parties agree that discussing Mr. Lujan's prior conflict of interest with GHURA and identifying him in the exhibits will compromise Mr. Lujan's ability to represent his client. A review of the record shows that Mr. Lujan and Smith's interests have diverged at this stage of the proceeding. Mr. Lujan has repeatedly asked that the documents be redacted not just for his client, but also for his personal reputation. At this stage, his unwillingness to allow any mention of his name has become untenable as the Government must be allowed to question Mr. Perez about his relationship with Mr. Lujan and knowledge of Mr. Lujan's past conflict, as set forth above.

An "attorney's undivided loyalty is required because the type of effective 'assistance of counsel' the Sixth Amendment guarantees a criminal defendant is that which puts the government to its proofs in an adversarial manner, and for this counsel free of conflicts of interest is necessary." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991). In this situation, Mr. Lujan's loyalties are divided, not between two clients as is most often the circumstance before courts, but between his personal interests and his client's. Mr. Lujan's personal interest in protecting his reputation and how he handled his affairs conflicts with his client's right to effective representation due to the anticipated

14

testimony of Mr. Perez. Cross-examination may damage Mr. Perez's credibility in a manner or to an extent that it would not if Mr. Lujan were not counsel of record. Further, if the jury finds Mr. Perez to not be credible based on his association with Mr. Lujan, the jury may question the veracity of other arguments that Mr. Lujan makes given that he elicited the testimony of Mr. Perez despite knowing that he had a similar conflict of interest. Thus, Smith's interest in a fair trial and effective representation of counsel will be compromised in a manner that would not exist if Mr. Lujan were not counsel of record.

Mr. Lujan himself has also repeatedly expressed concern that the unredacted documents will damage his credibility because the jury will think he has committed a crime. The Court finds this assertion to be unjustified, especially given that the Government intends to show that Mr. Lujan acted appropriately when he had a conflict and was denied a waiver. However, for the reasons set forth above, the Court finds a conflict of interest to exist.

The Court will also exercise its discretion to disqualify Mr. Lujan as counsel for Smith. The Court is mindful of the Sixth Amendment right to choice of counsel, but this right cannot be permitted to interfere with the fair, efficient, and orderly administration of justice. Moreover, a defendant's choice of counsel "may not be used as a device to manipulate or subvert the orderly procedure of the courts or the fair administration of justice." *United States v. Casey*, 480 F.2d 151, 152 (5th Cir. 1973) (internal citations omitted); *In re BellSouth Corp.*, 334 F.3d 941, 956-57 (11th Cir. 2003) (choosing attorney to force recusal of the judge was obstruction of orderly administration of justice); *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 754 n.6 (2d Cir. 1975) ("defendant's choice of counsel may not be manipulated in order to delay or interfere with the orderly processes of justice"). Similarly,

15

the Supreme Court and Ninth Circuit have indicated that district courts have "substantial latitude" in determining whether counsel must be disqualified specifically because of the potential for "the district court being whipsawed—damned if it does and damned if it doesn't disqualify," a "danger [that] is especially acute when the defendant himself is a lawyer." *United States v. Stites*, 56 F.3d 1020, 1024 (9th Cir. 1995) (quoting *Wheat v. United States*, 486 U.S. 153, 161, 163-64 (1988)).

Here, Mr. Lujan has a conflict that will impair Smith's right to effective assistance of counsel, which inherently interferes with the fair administration of justice. Further, this Court has previously cautioned Smith and Mr. Lujan that the right to choice of counsel does not permit a defendant to choose an attorney in an attempt to "shield" himself from admissible evidence. And the way the trial has proceeded thus far indicates defendant is attempting to do just that by requiring the Government to remove all references to his name, which would prevent it from introducing relevant and admissible evidence in its case-in-chief and to effectively impeach defense witnesses. This will not be permitted, as it also obstructs the fair and orderly administration of justice. Accordingly, the Court orders that Mr. Lujan be disqualified as Smith's attorney.

### iii. Declaration of Mistrial Based on Manifest Necessity

As set forth above, Mr. Lujan has a conflict of interest as to his interests and the interests of his client and must be disqualified. The Court now finds that there is no alternative but to declare a mistrial.

A trial court may declare a mistrial "whenever, in [its] opinion, taking all the circumstances into consideration, there is a 'manifest necessity' for doing so." *Renico v. Lett*, 559 U.S. 766, 773-74 (2010). Although the decision is "left to the 'sound discretion' of the judge . . . 'the power ought to

16

be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" *Id*. at 774 (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)). The "manifest necessity" standard is satisfied "when there is a 'high degree' of necessity." *Id*. (quoting *Arizona v. Washington*, 434 U.S. 497, 506 (1978)).

In determining whether manifest necessity exists, a trial court should ensure that it has "(1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chose the alternative least harmful to a defendant's rights [and/or] (3) acted deliberately instead of abruptly." *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008) (quoting *United States v. Bates*, 917 F.2d 388, 396 (9th Cir. 1990)). The determination also "must be based on evidence presented in the record." *Id*. (citing *United States v. Bonas*, 344 F.3d 945, 948-51 (9th Cir. 2003)).

In this case, there is manifest necessity to justify a mistrial. First, Mr. Lujan's conflict of interest requires disqualification, as set forth above. The Court has considered and attempted alternative remedies, including redaction of his name from all exhibits. However, the conflict is now obvious given that the Government must be allowed to present its case and cross-examine defense witnesses, and this will require at least some mention of Mr. Lujan and his conflict as GHURA legal counsel. This court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Vaughn v. Woodford*, 564 F. App'x 909, 910-11 (9th Cir. 2013). Allowing this trial to proceed would not comport with ethical or constitutional standards regarding a defendant's right to conflict-free counsel, and the proceedings would not appear fair to observers with regard to defendants or to the Government.

17

Next, manifest necessity exists because it is not practical to grant a continuance given the complexity of this case and "the high probability that many of the jurors would be unavailable on the new trial date." *United States v. Williams*, 717 F.2d 473, 475 (9th Cir. 1983). Moreover, given the amount of publicity that the trial has already engendered, a long continuance poses a "substantial risk of juror prejudice resulting from the extensive media coverage." *Id*.

Finally, a mistrial will benefit defendant Smith. He will be allowed time to obtain conflict-free counsel and thereby obtain the effective assistance of counsel that the Sixth Amendment requires. Accordingly, the Court declares a mistrial based on manifest necessity.

//

/

**IV.    Conclusion**

For the reasons set forth above, the Government's motion for reconsideration (ECF No. 159) is granted. Defendants' motion for reconsideration (ECF No. 161, 171), the Government's motion for a mistrial (ECF No. 160), and defendant Smith's motion to strike (ECF No. 167) are denied as moot.

It is ORDERED that David Lujan be disqualified as counsel, and a mistrial declared out of manifest necessity.

Mr. Smith is ORDERED to obtain new counsel or request that counsel be appointed for him if he qualifies. Pursuant to the requirements of 28 U.S.C. § 3161(e), a new trial shall begin on November 20, 2017 at 10:00a.m.

The parties are ORDERED to appear for a status conference on October 6, 2017 at 9:00a.m.

IT IS SO ORDERED.

Dated this 22nd of September, 2017.

RAMONA V. MANGLONA
Chief Judge, District of the Northern Mariana Islands, sitting by designation