UNITED STATES OF AMERICA,

       Plaintiff,

vs.

MARK S. SMITH,

       Defendant.

Case No.: 17-cr-00020-1

**DECISION AND ORDER DENYING DEFENDANT SMITH'S MOTIONS TO DISMISS, FOR RECONSIDERATION, AND TO PERMIT DAVID LUJAN TO REENTER APPEARANCE**

## I.    INTRODUCTION

Defendant Mark Smith was indicted with co-Defendant Glenn D. Wong on March 14, 2017, on fifty-five (55) counts. (ECF No. 1.) The first trial ended in a mistrial and the Court ordered Smith's trial counsel, David Lujan, disqualified. (Order Declaring Mistrial, ECF No. 174.) Before the Court is Smith's motion to dismiss the indictment and for reconsideration of the decision to disqualify his former trial counsel, David Lujan. (ECF No. 243.) Also before the Court is Smith's motion to permit David Lujan to reenter his appearance as counsel on condition that he will remain outside the presence of the jury. (ECF No. 242.)

The motions have been fully briefed,[1] and the Court heard argument on December 13, 2017. For the reasons articulated below, Smith's motions are DENIED.

---

[1] Motion to Dismiss the Indictment and for Reconsideration, ECF No. 243; Opposition Br., ECF No. 246; Reply Br., ECF No. 247. Motion to Allow David Lujan to Reenter an Appearance, ECF No. 242; Opposition Br., ECF No. 245.

1

## II.    BACKGROUND

Smith is charged with a total of fifty-five counts for allegedly conspiring with Wong to commit wire fraud and money laundering, for wire fraud and money laundering, theft of government property, and engaging in monetary transactions with proceeds of specified unlawful activity.  (Indictment, ECF No. 1.)  In 2011, Smith began serving as legal counsel for the Guam Housing and Urban Renewal Authority ("GHURA"), which, among other duties, administers the U.S. Department of Housing and Urban Development's ("HUD") Section 8 housing program.  As legal counsel, Smith was prohibited by conflict of interest regulations from receiving Housing Assistance Payments ("HAP") that were given to Section 8 landlords.  (*Id.* ¶ 6.)  Contrary to the regulations, however, Smith allegedly received HAP payments through a conspiracy that he entered into with Wong.  (*See generally id.*)

On March 2, 2015, Smith hired David Lujan as his defense attorney.  (ECF No. 40 at 5.)  Lujan served as legal counsel for GHURA immediately prior to Smith, and, because he owned several properties from which he received HAP funds, Lujan disclosed his conflict of interest and sought a conflict waiver from HUD.  (Ex. 1-2, ECF No. 30.)  After Lujan's waiver application was denied, he withdrew as counsel for GHURA.

Prior to trial, the Government filed a motion to disqualify Lujan as counsel for Smith on the ground that he had a conflict of interest with his former client, GHURA.  (ECF No. 30.)  In its motion, the Government argued that Lujan would be unable to cross-examine GHURA witnesses without disclosing confidential information, and that he would likely be called as a witness at trial to describe his own conduct in seeking a conflict waiver and any communications he had with Smith about such conflicts.  (*Id.* at 3–5.)  After hearing oral argument on the motion on May 17, 2017, the Court denied

2

the motion from the bench.  (Minutes, ECF No. 62.)

The Court issued its written order denying the Government's motion to disqualify Lujan on May 24, 2017. (Order, ECF No. 78.) The motion was denied because the Government failed to identify any particular witness or piece of testimony or other evidence to demonstrate that confidential information may be disclosed at trial. (*Id*. at 5.)  As the Court stated, "[t]he Government's motion no more than hinted at why Lujan would 'likely' be a witness." (*Id*. at 7.)  Further, the Government had failed to identify any evidence demonstrating or suggesting that Lujan and Smith discussed the Section 8 program and the conflict of interest regulations. (*Id*.)  In addition, based on the information presented to the Court, Lujan did not need to be called as a witness because how he "handled his own possible conflicts in 2003 is not relevant to the charges facing Smith," and his belief about whether he needed a waiver "does not have a bearing on whether Smith's dealings violated Section 8 conflict regulations." (*Id*.)  If the Government wanted an attorney to testify about what a reasonably prudent lawyer in Smith's situation would or should do, "[a]ny attorney in the country who has been a Section 8 landlord while serving as counsel" could have testified. (*Id*.)  Finally, the Government failed to articulate that Lujan's testimony was necessary "to establish that Smith 'knowingly' participated in a wire fraud conspiracy and other illegal activities in connection with the Section 8 program." (*Id*. at 8.)

The written order was filed after the Government filed its exhibit list. (ECF No. 73.)  The list included Government Exhibit 18a, containing 1,378 pages. (*Id*. at 3.)  Almost two weeks after the Court issued its written order, which was a day before jury selection for the trial was to begin on June 6, 2017, the Government filed a notice regarding its intent to introduce certain exhibits, including Exhibit GE18a, pgs. 713–714. (ECF No. 93.)  This exhibit was an email chain in which Smith was

3

asked about whether he may have a conflict of interest and was informed about Lujan's conflict of interest as GHURA counsel and Lujan's decision to seek a waiver from HUD. (*Id.*) Defendants responded that the exhibits listed appeared to "circumvent the Court's clear ruling that Mr. Lujan is not disqualified and that the Government does not need his testimony at the trial." (ECF No. 99.)

What occurred during the trial has been recounted in detail in the Court's order declaring a mistrial (ECF No. 174) and the order denying Defendant Wong's motion to dismiss the indictment (ECF No. 219) and is incorporated by reference here. However, some of that discussion warrants repeating here.

At the time the Court declared a mistrial, there were three competing motions for a mistrial. First, Defendants asked for reconsideration of the denial of their motion for a mistrial based on the jury mistakenly seeing Exhibit GE18a, pgs. 713–714. (ECF No. 161.) Second, the Government, in its response to Defendants' motion for reconsideration, requested a mistrial based on Lujan having an actual conflict of interest with respect to serving as Smith's counsel. (ECF No. 165.) Third, the Government separately filed a motion for a mistrial based on Lujan's conduct during his opening statement. (ECF No. 160.)

The Court held a hearing on the motions, heard argument from all of the parties, and thereafter indicated it was inclined to declare a mistrial, but decided to take the motions under advisement. The next day, the Court reconvened with the parties, declared a mistrial based on manifest necessity due to Lujan's conflict of interest as Smith's counsel, and ordered that Lujan be disqualified.

In the order declaring a mistrial, the Court explained that it now had a more complete understanding of the Government's theory of the case and the Government had identified a specific

4

witness, Anthony Perez, to support its argument that Lujan should be disqualified.  (Order Declaring Mistrial 12–13.)  Perez was listed as a defense expert witness and was a former associate of Lujan's at the time Lujan learned of his conflict of interest as GHURA legal counsel.  The Government anticipated that Perez would testify favorably for Smith with regard to whether Smith had a conflict of interest as GHURA counsel, and the Government argued that Perez's knowledge of Lujan's conflict in similar circumstances was relevant for cross-examining Perez.  Based on this understanding of how the trial would likely unfold, the Court reconsidered an earlier ruling that Lujan's name must be redacted from all of the Government's exhibits, finding that his identity would inevitably be revealed during trial due to, at a minimum, Perez's testimony.  (*Id*.)

Next, the Court found that Lujan's decision to call Perez as an expert would undermine Perez's credibility to a greater extent than if Lujan were not Smith's attorney and therefore demonstrated that Lujan's interest in protecting his personal reputation was compromising his client's defense.  (*Id*. at 14–15.)  Moreover, the Court found that because the Government had a right to cross-examine Perez and introduce evidence that might reference Lujan's name and conflict as GHURA counsel, his continued presence at trial was improperly shielding his client from admissible, relevant evidence. (*Id*. at 15–16.)  Given these circumstances, the Court ordered a mistrial based on manifest necessity. (*Id*. at 16–18.)

Smith, through newly retained counsel, has filed a motion to dismiss the indictment, arguing that there was no manifest necessity to justify a mistrial and the Government, instead, provoked a mistrial.  (ECF No. 243.)  Smith also requests that the Court reconsider its decision to disqualify Lujan and, alternatively, allow him to reenter his appearance on the condition that he appear on Smith's

5

behalf only outside of the presence of the jury.  (ECF Nos. 242, 243.)

### III.  LEGAL STANDARD

Smith submits that the indictment must be dismissed because double jeopardy bars his retrial.  Further, he contends that because double jeopardy bars a second trial, the Court should reconsider its decision to disqualify David Lujan as counsel.  Finally, in the alternative, Smith requests that the Court permit David Lujan to reenter his appearance as counsel on the condition that he not appear before the jury.

Generally, if a defendant requests or consents to a mistrial, double jeopardy does not attach and the defendant may be retried.  *Oregon v. Kennedy*, 456 U.S. 667, 683 (1982).  However, if the Government requests a mistrial or the defendant does not consent to the mistrial, double jeopardy applies absent a showing by the Government that the "mistrial was justified by manifest necessity."  *Id*.  Additionally, a defendant's consent is vitiated and double jeopardy bars retrial if the defendant can show "the prosecutor intended to provoke a mistrial or otherwise engaged in 'overreaching' or 'harassment.'"  *Id*. at 683–84.

The "manifest necessity" standard is satisfied "when there is a 'high degree' of necessity."  *Id*. (quoting *Arizona v. Washington*, 434 U.S. 497, 506 (1978)).  In determining whether manifest necessity exists, a trial court should ensure that it has "(1) heard the opinions of the parties about the propriety of the mistrial, (2) considered the alternatives to a mistrial and chose the alternative least harmful to a defendant's rights [and/or] (3) acted deliberately instead of abruptly."  *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008) (quoting *United States v. Bates*, 917 F.2d 388, 396 (9th Cir. 1990)).  The determination also "must be based on evidence presented in the record."  *Id*.

6

(citing *United States v. Bonas*, 344 F.3d 945, 948–51 (9th Cir. 2003)).

The Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration, but "numerous circuit courts have held that motions for reconsideration may be filed in criminal cases." *United States v. Krug*, Case No. 09-cr-01148, 2013 WL 12216365, at *2 (C.D. Cal. Feb. 4, 2013) (quoting *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005)). "Motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings," which are the standards under Fed. R. Civ. P. 59(e) and 60(b). *United States v. Feathers*, Case No. 14-cr-00531, 2017 WL 783947, at *2 (N.D. Cal. Mar. 1, 2017) (quoting *United States v. Mendez*, Case No. 07-cr-00011, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008)).

Fed. R. Civ. P. 59(e) permits a court to alter or amend an entry of judgment "on any of four grounds: (1) a manifest error of law or fact upon which the judgment is based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; and (4) an intervening change in controlling law." *United States v. Motta*, Case No. 06-cr-00080, 2012 WL 6569284, at *2 (D. Haw. Dec. 17, 2012) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999).

Fed. R. Civ. P. 60(b) permits relief from final judgments, orders, or proceedings on any of the following six grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer

7

equitable; or

(6) any other reason that justifies relief.

## IV.    DISCUSSION

Smith has filed a motion to dismiss the indictment and for reconsideration of the decision to disqualify David Lujan as trial counsel.  (ECF No. 243.)  He has also filed a motion requesting the Court allow Lujan to reenter his appearance as counsel on the condition that Lujan will appear on behalf of Smith only outside the presence of the jury.  (ECF No. 242.) The Court will address each motion in turn.

### A.  Motions to Dismiss and for Reconsideration

Smith contends that the Court erred in *sua sponte* declaring a mistrial and disqualifying David Lujan as counsel because no manifest necessity existed to justify the mistrial.  (Motion to Dismiss, ECF No. 243.)  Instead, Smith argues, the Government engaged in prosecutorial misconduct with the sole purpose of disqualifying Lujan and causing a mistrial instead of obtaining a verdict, and the Court erred by failing to consider alternatives before declaring a mistrial.  (*Id*. at 16.)  Thus, Smith requests that the Court dismiss the indictment and reconsider its decision to disqualify Lujan.

### i.      Whether Smith Consented to a Mistrial

The Government contends that Smith implicitly consented to a mistrial and therefore double jeopardy does not apply.  (Opposition Brief 4–5, ECF No. 246.)  In support of the argument, the Government offers the same authority that it offered to claim that Wong also consented to a mistrial. (*See* Brief in Opposition to Wong Motion to Dismiss, ECF No. 209.)  For the same reasons the Court rejected the Government's position in the order denying Wong's motion to dismiss the indictment

(Order 4–6, ECF No. 219), the Court finds that Smith did not consent to a mistrial.  He argued in opposition to the Government's request for a mistrial, and filed a separate motion for a mistrial due to alleged prosecutorial misconduct.  Even if Smith did not object at the time the Court declared a mistrial, the record as a whole indicates that Smith did not consent to the Government's request for a mistrial.

### ii.　　Whether the Government Provoked a Mistrial

Smith maintains that the Government "came to trial with the specific intent of producing a mistrial by introducing evidence that would cause Lujan to be prejudiced before the jury, thus requiring his disqualification and a mistrial."  (Motion to Dismiss 16.)  To demonstrate this, he relies on the Government's first attempt to disqualify Lujan, failure to raise the conflict with respect to Perez prior to trial, repeated attempts to introduce unredacted documents, including Exhibit 18a, pgs. 713–714, into evidence, and statements made by the Government during trial.  (*See generally id*.)  Moreover, according to Smith, the Government "admitted in open court that its entire case apparently depended on directly presenting Lujan's prior conflict to the jury." (*Id*. at 17.)  In sum, Defendants were goaded into requesting a mistrial on the ground that Lujan was compromised in his ability to represent his client after the jury accidentally saw Government Exhibit 18a, 713–714, and double jeopardy therefore bars a second trial.  (*Id*. at 30.)

As an initial matter, the Court did not grant Defendants' motion for a mistrial, so whether the Government caused them to request one is largely immaterial for purposes of deciding this motion.  Nonetheless, the Court understands Smith's primary argument to be that prosecutorial misconduct caused the Court to *sua sponte* declare a mistrial and that therefore a retrial is not permitted.  Despite

9

the fact that the Court did not *sua sponte* grant a mistrial, but took three competing motions for a mistrial under consideration, held a hearing, and then issued a ruling, the Court will consider the merits of Smith's argument. However, the Court will address this argument within the context of whether the Government's conduct is evidence of prosecutorial misconduct or intent to harass Smith.

Broadly, Smith frames the Government's pretrial and trial requests to disqualify Lujan as misconduct and part of a strategy to cause a mistrial and thereby make Lujan available to serve as a witness for the prosecution. (Motion to Dismiss 29–30.) This is nothing more than speculation. Defendant offers no evidence other than a theory of why events unfolded in the way that they did to demonstrate that the two instances in which the Government sought to disqualify Lujan were done in bad faith or so unreasonably late that double jeopardy bars a second trial. Indeed, although the Government may have initially wanted to call Lujan as a witness, nothing in the record demonstrates or suggests the Government still intends or wishes to do so. In fact, after the Court held that Lujan was not a necessary witness and denied the motion to disqualify, the Government filed an amended witness list that did not include Lujan. (*See* ECF No. 98.)

To be sure, the Government's first attempt to disqualify Lujan was deficient and therefore denied. No concrete details as to why Lujan would have a conflict with his former client, GHURA, and why it was necessary to call him as a witness were provided. The second request to disqualify, however, was based on substantively different grounds—conflict of interest with Smith—and had nothing to do with calling Lujan as a witness. It is therefore unreasonable for Smith to argue and for the Court to conclude that the Government's trial strategy was aimed at disqualifying Lujan so he could serve as a witness. *Compare Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d

10

1045, 1050–51 (9th Cir. 1985) (finding motion to disqualify was filed in bad faith because the record showed moving attorney also sought unreasonable stipulations, exclusions of evidence on frivolous grounds, and threatened to call counsel as a witness unless opposing party would stipulate the contested evidence was false).

Smith also suggests that the Government's failure to file a motion to disqualify based on Perez or its exhibits referencing Lujan's conflict as GHURA counsel prior to trial demonstrates bad faith or that the Government intended to cause a mistrial. Certainly, the Government's failure to realize that Lujan had a conflict with Smith was unfortunate, but does not rise to the level of "flagrant misbehavior." *United States v. Carter*, 1 F. App'x 716, 718 (9th Cir. 2001) (holding prosecutor's failure to disclose *Brady* material was incompetent but not flagrant misbehavior). This is especially true given that the record is unclear as to when the Government was provided with the details of Perez's anticipated testimony. On June 20, 2017, the most recent witness list as to Perez was filed by Defendants (ECF Nos. 114), and it identifies him as an expert witness but does not indicate the subject of his testimony or whether an expert report was provided to the Government.

The Court has been involved with these proceedings since early in the case and has observed all of the parties and their counsel on numerous occasions. Based on the Court's familiarity with these proceedings, it can reach no other conclusion than that the Government sensed that Lujan had a conflict, but was unable to properly articulate or identify its contours. The conflict was not, as the Government first claimed, with GHURA, but with Smith. In other words, the fear that a conflict existed was there, but the Government was unable to piece together the record in a way that would clarify the conflict for the Court and opposing counsel. An inability to properly assert a legal argument

11

does not show bad faith.

Furthermore, as the Government described at the December 13, 2017 hearing on these motions, it understood the Court's order denying the initial motion to disqualify as finding that Lujan had no conflict and that any mention of his service as GHURA counsel would not cause either a mistrial or an issue with Smith. Instead, the Government assumed that Smith was aware of Lujan's past issues with GHURA and had nonetheless chosen him as counsel. Based on this assumption, the Government concluded that introducing certain exhibits referencing Lujan's service would not lead to any issues during trial as drastic as a mistrial.

Moreover, viewed in the context of the entire record, it is more reasonable to conclude that the Government was attempting to fulfill its duty to ensure that the proceedings are fair by ensuring all counsel are conflict-free. And Lujan did have a conflict. As this Court has explained:

> An "attorney's undivided loyalty is required because the type of effective 'assistance of counsel' the Sixth Amendment guarantees a criminal defendant is that which puts the government to its proofs in an adversarial manner, and for this counsel free of conflicts of interest is necessary." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991). In this situation, Mr. Lujan's loyalties are divided, not between two clients as is most often the circumstance before courts, but between his personal interests and his client's. Mr. Lujan's personal interest in protecting his reputation and how he handled his affairs conflicts with his client's right to effective representation due to the anticipated testimony of Mr. Perez. Cross-examination may damage Mr. Perez's credibility in a manner or to an extent that it would not if Mr. Lujan were not counsel of record. Further, if the jury finds Mr. Perez not to be credible based on his association with Mr. Lujan, the jury may question the veracity of other arguments that Mr. Lujan makes given that he elicited the

12

> testimony of Mr. Perez despite knowing that he had a similar
> conflict of interest.

(Order Declaring Mistrial 14–15, ECF No. 174.)

In designating Perez as an expert, Lujan may have been hoping to convince the Court that it would be unfair for the Government to cross-examine Perez about his association with and knowledge of Lujan's conflict. But this serves only to demonstrate both that Lujan's view put the Government in an untenable situation of being unfairly limited on cross-examination and that his personal interests were placing Smith's defense at risk.

With respect to the unfairness that Lujan's conflict with Smith created for the Government, the Court once again reminds Smith that although he has a Sixth Amendment right to counsel of his choice, the right is not unlimited. He cannot and will not be permitted to use his counsel of choice to shield himself from relevant, admissible evidence. That Lujan preceded Smith as GHURA counsel is a fact. That Lujan found himself in a situation similar to Smith while GHURA counsel and sought a waiver is a fact. While Lujan and the Government disagree as to whether these facts cast Lujan in a negative light, of material importance here is that Lujan believed it would damage his credibility with the jury and his reputation, and he therefore sought exclusion of all evidence bearing his name.

Furthermore, it is true that the U.S. Constitution speaks only of defendants with respect to the right to a fair trial and the criminal justice system has fashioned rules to protect this right. But this constitutional right cannot be wielded to run roughshod over the Government's ability to present its case-in-chief or impeach the credibility of defense witnesses. "Society has a right to expect that the judicial system will be fair and impartial to all who come before it," and this requires taking into

13

account "the fundamental interest of the government and the public in insuring the integrity of the judicial process." *Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 764 F.2d 590, 596 (9th Cir. 1985). In other words, a defendant may have the constitutional protection of the right to a fair trial, but the Government is still entitled to a fair trial. Without this balance, the system will have failed to produce "fair trials designed to end in just judgments." *Id.* (quoting *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969)). In this case, prohibiting the Government from raising Lujan's conflict as GHURA counsel would unfairly prevent it from offering relevant, admissible evidence during trial.

Before addressing Smith's remaining arguments, the Court reiterates that although the Government failed to timely alert the Court of Lujan's conflict, all officers of the court have a duty to bring conflicts to the Court's attention. This is especially true in a criminal case in which a defendant has a constitutional right to a fair trial, and in light of the purpose of the conflict of interest rules, which is to prevent an attorney "from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent." *Smiley v. Dir., Office of Workers Comp. Progs.*, 984 F.2d 278, 282 (9th Cir. 1993). Assuming the Government should have acted earlier, so, too, should Lujan. By June 5, 2017, when the Government filed its notice of intent to introduce certain exhibits (ECF No. 93), Lujan was on notice of their existence, contents, and the Government's intent to use them at trial. He should have considered at that time whether he should recuse and brought the issue to the Court's attention if he felt he could not continue representing Smith, as he argued during trial. In sum, the sequence of events regarding the two attempts to disqualify Lujan demonstrates not bad faith by the Government, but a failure by all parties to timely bring matters to the Court's attention.

14

As stated during the December 13 hearing on the motion to dismiss the indictment, the Government's filing of the notice regarding certain exhibits is unusual. But that in itself does not establish bad faith or show a motive to cause a mistrial. Lujan also could have done more than file a notice of opposition to ECF No. 93, including file a motion *in limine*. Based on the representations of the parties at the December 13 hearing, the Government interpreted the Court's order denying the motion to disqualify Lujan as not precluding it from introducing exhibits that included his name at trial, and believed the Court considered his conflict as GHURA counsel as irrelevant only for purposes of the motion to disqualify. Smith and his counsel Lujan appear to have interpreted the order to state the inverse. This divergence of understanding explains much of how this case has unfolded, but does not establish either bad faith or that the Government unreasonably failed to raise an issue that it thought would cause a mistrial if not addressed prior to a jury being empaneled.

Next, Smith points to the Government's repeated attempts to introduce evidence that did not redact Lujan's name, arguing this is an attempt to circumvent this Court's order denying the motion to disqualify and its statement from September 13, 2017 that there was to be no discussion of the arguments made in the motion to disqualify during the trial. (Motion to Dismiss 7–9; Tr. of Sept. 13, 2017 at 13.) Again, what Smith fails to comprehend is that the Court was not presented with a meaningful theory of the Government's or Defendant's case at the time the first motion to disqualify was argued and decided or at any time prior to when Exhibit 18a, pgs. 713–714, was first discussed, and therefore had no reason to believe, like Lujan himself argued, that Lujan's past conflict as GHURA counsel was relevant to the Government's case.

Once the Court was presented with the opening statements and exhibits, it understood that

proving Smith's knowledge of his conflict depended, at least in part, on showing the jury when and how Smith learned of Lujan's conflict, and the Court revisited its decision and found that the information was relevant. Furthermore, although the Court's order on the motion to disqualify stated that Lujan's conflict was not relevant, it was focused on whether Lujan's *testimony*, not exhibits discussing his conflict, was relevant and admissible. (*See* Order on Disqualification 7–8.) Even if the Court's order on the motion to disqualify could be characterized as skeptical of whether Lujan's conflict as GHURA counsel would be relevant at trial, nothing in the order prohibited the Government from using exhibits discussing that conflict. In his opening statement at the trial, Lujan argued to the jury that Smith was not a covered individual under the HUD regulations, and therefore all the charges against him must fall. In making such an argument, Lujan made how he handled his own possible conflicts in 2003 very relevant to the case against Smith. For Smith to then argue that the Government's attempt to use Exhibit 18a, pgs. 713–714, and other similar exhibits was an attempt to undermine or circumvent the disqualification order is therefore unpersuasive and exaggerated.

Smith further claims that the Government's repeated attempts to introduce these exhibits goaded Lujan into requesting a mistrial, which again demonstrates a strategy to have him disqualified so that he could be called as a witness. As explained above, the Government's attempt to introduce exhibits addressing Lujan's conflict as GHURA counsel was not done with the self-serving intent to have him disqualified so that he could serve as a witness. Instead, the Government's conduct reflects a reasonable trial strategy with regard to satisfying its burden of proof as to Smith's knowledge and establishing when his illegal conduct may have begun. Further, even though the Government eventually realized that these exhibits, coupled with Perez's testimony, would require Lujan's

16

disqualification, this knowledge is insufficient to demonstrate an intent to goad Lujan into requesting a mistrial.

Finally, Defendant turns to the statements of attorney Kesaris. During the hearing on the motions for a mistrial, Kesaris argued that the Government "must be allowed to show the jury that it was David Lujan rather than just some anonymous blacked out name who recognized" that GHURA legal counsel was a "covered individual" subject to the conflict of interest regulations because the evidence was relevant to proving that Smith had knowledge that he may be subject to the regulations and when he knew such information. (*See* Motion to Dismiss 28.) Smith believes these statements, combined with the motion to disqualify Lujan prior to trial, demonstrate that the Government "believed it needed a do-over" to make sure Lujan could serve as a witness at trial. (*Id*. at 31.)

What Kesaris was arguing was that the Government needed to be able to prove its case beyond a reasonable doubt, and some of the best evidence for proving when and how Smith knew or should have known that he had a conflict of interest while serving as GHURA legal counsel was the fact that Lujan and Smith served back-to-back as GHURA legal counsel, Lujan had a similar conflict, and Lujan was an exemplar when he disclosed his conflict, sought a waiver from HUD, and then resigned as GHURA legal counsel when HUD denied his request. Nothing in Kesaris' statements suggest the Government wanted a "do-over" of the trial. Nothing in his statements, even when considered alongside the Government's pretrial attempt to disqualify Lujan, suggests that the Government was asking for reconsideration of the Court's decision that Lujan should not be called as a witness. The Government had evidence to show what Lujan did with regard to his conflict; they did not need him to testify about his own experience because the GHURA records exhibits showed it. The specter of

Lujan being called as a witness never arose or was even mentioned by the Government after the initial motion to disqualify was decided in May 2017. For Smith to now argue that the Government's statements suggest that the Government intended to cause a mistrial so that Lujan could be called at a second trial is speculative and frivolous. All the Government was requesting was for the Court to allow unredacted documents that showed when and how Smith learned that he had a conflict of interest, which was essential to proving its case beyond a reasonable doubt.

Defendant relies heavily on two cases to argue that even if he cannot prove the Government acted in bad faith, double jeopardy applies nonetheless. First, Smith relies on *Downum v. United States*. 372 U.S. 734 (1963). In the reply brief, Smith argues that this case demonstrates that the Government acted in bad faith (Reply 2, ECF No. 247), but at the motions hearing, Smith also argued that its holding shows that the Government's decision not to raise the conflict of interest issue until after trial started is simply too great an error to permit a second trial. In *Downum*, the prosecution learned the day before trial that a key witness for two of the six pending charges against the defendant had not been located. 372 U.S. at 735. The prosecution went ahead with trial, however, and after the jury was empaneled and sworn, asked the judge to discharge the jury because its key witness for two counts in the indictment was not present. *Id.* Defendant moved that the two counts be dismissed and asked that the trial continue with the rest of the counts. *Id.* Defendant's motion was denied and the trial court discharged the jury over his objection. *Id*. The Supreme Court held that double jeopardy barred a second trial because the prosecution "took a chance" by going to trial without first ascertaining which witnesses were available and the case was therefore "simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." *Id*. at 737.

18

*Downum* does not apply to the facts of this case. No party has suggested that Lujan's absence as a witness meant that the Government went to trial without sufficient evidence to convict. Moreover, Smith's case does not present a clear-cut case in which the prosecution should have simply asked for a continuance of the trial date due to the absence of a witness. As described above, nothing in the record suggests that the Government went into trial still hoping that Lujan would serve as its witness or knowing that Lujan's prior service as GHURA counsel would ultimately lead his interests to diverge from Smith's. As has been articulated in the order declaring a mistrial, it was not until *during* trial that the Court and the Government first heard from Lujan that if his name and prior conflict as GHURA counsel were mentioned to the jury that he would lose credibility and therefore would be unable to effectively represent his client. Although every party has a duty to bring conflicts of interest to the Court's attention, it cannot be fairly said that the Government bears the additional burden of second-guessing a defendant's decision to proceed with counsel of his choice when that counsel has represented that there is no conflict.

Next, Smith relies on *United States v. Sammaripa*, 55 F.3d 433, 435 n.1 (9th Cir. 1995), to argue that the Government failed its "duty to consider a defendant's right to be free from double jeopardy" by not informing the Court about its concerns regarding cross-examination of Perez. (Motion to Dismiss 19.) In *Sammaripa*, the prosecution failed to raise a *Batson* error caused by defense counsel during *voir dire*, but then raised it only hours after the jury was empaneled and requested a mistrial. 55 F.3d at 434. The Ninth Circuit held that the error should have been evident to the prosecution at the time it occurred and because the prosecution had a duty to consider a defendant's double jeopardy rights, a second trial was not permitted. *Id.* at 435.

19

As with *Downum*, *Sammaripa* is not persuasive. Here, the Government did try to disqualify Lujan prior to trial, albeit on different grounds than what ultimately required his disqualification. Moreover, the Government's conduct in *Sammaripa* was egregious—it was only hours after a jury was empaneled that the Government realized it should have raised the *Batson* objection and requested a mistrial. In this case, the record is unclear as to when the Government learned what Perez's testimony would be. The witness list filed by Defendants (ECF No. 114) lists him but does not detail what his testimony would be. Because the evidence does not show when the Government was informed about Perez's testimony, the Court is reluctant to grant a mistrial based on any factual similarities between *Sammaripa* and this case. Defendants have not submitted any evidence to demonstrate that they disclosed to the Government prior to trial what Perez's testimony would have been. Further, as set forth above, even if the Government knew what Perez's testimony would be, there was a misunderstanding of the Court's order denying the motion to disqualify, with the Government interpreting the order as allowing information about the conflict but not to call Lujan as a witness.

In conclusion, although the record suggests a certain level of prosecutorial ineffectiveness, there is no hint of prosecutorial misconduct, bad faith, or an unreasonable failure to bring Lujan's conflict to the Court's attention to support the fanciful theory that the Government came to trial with no intention of obtaining a verdict.

### iii. Whether the Court Failed to Consider Alternatives

Smith also argues that the Court erred when it "*sua sponte* declared a mistrial" because it "could have permitted the defense to determine whether to remove Perez as a designated witness,

20

which defendant obviously would have, or it could have simply struck Perez from defendant's witness list." (Motion to Dismiss 26.) To support this argument, Smith points to another designated witness, Cynthia Ecube, and indicates that she would have offered testimony similar to Perez's and could therefore have substituted for Perez if the Court or Defendants removed Perez from the witness list. (*Id*. at 18, 26.)

There are several flaws with this line of argument. First, Smith fails to acknowledge the fact that Lujan would not permit *any* evidence regarding his name and service as GHURA counsel to be shown to the jury. Lujan's demands created a problem wider than the cross-examination of Perez. The Court focused on Perez to illustrate why Lujan's conflict would inevitably be revealed to the jury and why his interests were no longer aligned with Smith's. Second, requiring Smith to remove an expert witness due to the identity of defense counsel is precisely the type of situation the rules on conflicts attempt to avoid. As set forth above, the purpose of the rules regarding conflicts is to prevent an attorney "from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent." *Smiley v. Dir., Office of Workers Comp. Progs.*, 984 F.2d 278, 282 (9th Cir. 1993). Here, removing Perez from the witness list is not "enforcing a client's rights to the fullest extent." Instead, it is compromising Smith's right to a fair trial in which the Government's case is thoroughly tested by the defense. Finally, while Ecube was listed as an expert, neither Lujan nor Maher informed the Court as to what she would be testifying to and why she would be an adequate substitute for Perez. Smith has provided nothing to substantiate this argument, such as an affidavit or expert report. More importantly, Smith has not shown how Ecube will not be subject to the same cross-examination about Lujan's handling of his own conflict

21

of interest.  Accordingly, the Court finds that removing Perez from the witness list was not a reasonable alternative and therefore did not err in failing to inquire about Ecube prior to declaring a mistrial.

Because the Court finds that it did not err in finding that manifest necessity justified a mistrial and finds that the Government did not provoke a mistrial or goad Smith to request a mistrial, the motion to dismiss the indictment and reconsider the disqualification of Lujan is denied.

## B.  Motion to Allow Lujan to Reenter Appearance

Defendant Smith seeks to have Lujan reenter an appearance on his behalf on the condition that Lujan will not appear in the presence of the jury.  (Motion re: Lujan Appearance, ECF No. 242.)  He contends that any prejudice that he may suffer from Lujan's appearance "accrues at trial in the presence of the jury" and therefore Lujan may serve as counsel "free of conflict during pretrial and proceedings outside of the presence of the jury."  (*Id*. at 2.)

The Court has reviewed the case law submitted by Smith and is unpersuaded that the proposal regarding Lujan's limited appearance is workable or in Smith's interests.  First, all of the case law submitted addresses the specific situation in which a lawyer is disqualified under the witness-advocate rule, and that is not what happened here.  Next, the case law differentiates between pretrial matters and trial, but this case has passed the pretrial stage.  All discovery, depositions, and motions *in limine* were addressed prior to the first trial in this case.  There is no longer a pretrial stage as was present in the cases submitted.  *See, e.g.*, *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 718 (S.D. Tex. 1999) (attorney not disqualified from participating in discovery and pretrial motions).

Moreover, as the parties are aware, part of the voir dire process is asking the potential jurors if they know anyone affiliated with the case, including the attorneys.  "*Voir dire* plays a critical function

22

in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). Asking whether any of the potential jurors know Lujan is therefore a way of removing individuals who will not be able to act impartially toward Smith or toward the Government based on their affiliation with or knowledge of Lujan. If the Court failed to mention Lujan's affiliation with the case, but learned later that an empaneled juror knew he was a "behind-the-scenes" lawyer, no one would know that said juror was biased against Smith because of some animosity towards Lujan or was biased against the Government because of some favorable sentiments towards Lujan. In either case, the right to an impartial jury by both parties would not be satisfied. More pointedly, Smith may still be unfairly prejudiced should a juror compare his conduct as GHURA legal counsel to Lujan's conduct. Thus, keeping Lujan out of the presence of the jury is insufficient because the jury can still find out that he is representing Smith.

Trial courts "have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat v. United States*, 486 U.S. 153, 161 (1988). Potential jurors must be questioned about their knowledge of the individuals, including attorneys, involved with the case to weed out biased jurors and the jury will inevitably learn that Lujan is Smith's attorney. Thus, to protect Smith's interests at trial and the integrity of the proceedings, Lujan will not be permitted to reenter an appearance for Smith even in a limited capacity.

## V. CONCLUSION

That this case ended in a mistrial is a travesty. All parties must shoulder some of the responsibility. In particular, a number of miscommunications and misunderstandings between the parties caused a great deal of confusion and finger-pointing during trial. This motion to dismiss the

23

indictment is the direct result and continuation of that behavior.  It should go without saying that far more is demanded from officers of the court, and all parties are on notice that the Court expects more diligence and professionalism going forward.

For the reasons set forth above, Smith's motion to dismiss the indictment and for reconsideration of the decision to disqualify Lujan (ECF No. 243) is DENIED.  The motion to allow Lujan to reenter an appearance for Smith (ECF No. 242) is also DENIED.

**SO ORDERED** on December 26, 2017.

_____
RAMONA V. MANGLONA, Designated Judge

24