# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MARK S. SMITH,

      Defendant.

CRIMINAL CASE No. 17-00020


**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO RECUSE**

Before the Court is Defendant Mark Smith's motion to recuse pursuant to 28 U.S.C. §§ 144 and 455 filed three days before jury trial was to begin. (Mot., ECF No. 411.) Attached to the motion is a certification from counsel Darleen Hiton as well as an affidavit from Defendant Smith making serious allegations that I, Designated Judge Ramona V. Manglona, am collaborating with the Government and that I am biased and partial against Smith because I concurrently preside over a related *qui tam* matter and because Smith filed a motion challenging my authority to sit as a designated judge in the District Court of Guam. (*See* Smith Aff., ECF No. 412; Hiton Decl., ECF No. 413.) The Government immediately filed an initial opposition. (Opp'n, ECF No. 416.) Given that jury trial was set to begin in a matter of days and having reviewed the briefs, the Court *sua sponte* addressed the motion at a status conference held on October 20, 2021, during which time this Court DENIED the motion. (*See* Min. ECF No. 418.) The Court now sets forth this decision memorializing its reasoning for denying the motion.

/ /

# I. BACKGROUND

On March 14, 2017, a grand jury returned a 56-count Indictment against Defendants Mark S. Smith and Glenn D. Wong for the offenses of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1349 and 1343; Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2; Theft of Government Property, in violation of 18 U.S.C. § 641; Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (h) and 1957; Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957 and 2; Laundering of Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2; and False Statement on Loan Application (against Wong only), in violation of 18 U.S.C. §§ 1014 and 2. (Indictment, ECF No. 1.) The allegations all stem from Mark Smith's prior employment as legal counsel for the Guam Housing and Urban Renewal Authority ("GHURA").

Chief Judge Frances Tydingco-Gatewood of the District Court of Guam shortly thereafter recused herself pursuant to 28 U.S.C. § 455(a), requiring a judge to disqualify herself where impartiality might reasonably be questioned. (*See* Am. Order of Recusal, ECF No. 5.) I, the Chief Judge of the District Court for the Northern Mariana Islands, was subsequently designated to preside over this matter pursuant to Ninth Circuit Chief Judge Sidney Thomas' general designation order. (Notice of Designation, ECF No. 17.)

The first jury trial was held beginning on September 12, 2017 (Min., ECF No. 148), but after five days of jury trial, this Court declared a mistrial out of manifest necessity and ordered that then-defense counsel David Lujan for Mark Smith be disqualified as counsel given a conflict of interest with his client (*see* Min., ECF No. 175; Order Declaring Mistrial, ECF No. 174). In disqualifying

2

Lujan, who was the immediate prior GHURA counsel, the Court noted that "Mr. Lujan's loyalties are divided, not between two clients as is most often the circumstance before courts, but between his personal interests and his client's." (Order Declaring Mistrial at 14-15.) "Mr. Lujan's personal interest in protecting his reputation and how he handled his affairs conflicts with his client's right to effective representation due to the anticipated testimony of Mr. Perez" who had knowledge of Lujan's similar conflict of interest when Lujan was GHURA counsel. (*Id*.) This is particularly so where "the Government intends to show that Mr. Lujan acted appropriately when he had a conflict and was denied a waiver." (*Id*.)

Defendant Smith filed a motion on November 27, 2017 to permit Lujan to re-enter his appearance as counsel for Defendant outside the presence of the jury (ECF No. 242) as well as a motion for the Court to reconsider the disqualification of Lujan the following week (ECF No. 243). After reviewing the briefs and hearing arguments on the motions, the Court denied Defendant Smith's motions, finding that allowing Lujan a limited appearance as a "behind-the-scenes" lawyer would impact the voir dire process and the right to an impartial jury. (Decision Denying Mot. for Reconsideration at 22-23, ECF No. 254.) "Furthermore, Smith may still be unfairly prejudiced should a juror compare his conduct as GHURA legal counsel to Lujan's conduct." (*Id*. at 23.)

After years of delay due to Ninth Circuit appeals regarding the mistrial, disqualification of Lujan and motions to dismiss, and due to the COVID-19 pandemic, jury trial was reset to begin on May 25, 2021. (Second Am. Scheduling Order, ECF No. 331.) However, upon Defendant Wong's unopposed motion, jury trial was continued to October 19, 2021. (Min., ECF No. 340; Third Am. Scheduling Order, ECF No. 356.) Defendant Glenn Wong has since passed away such that the Court

3

dismissed the Indictment against him, and the sole remaining defendant is now Defendant Mark Smith. (Order Dismissing Wong, ECF No. 345.) Two months before the October 19 trial date, prior defense counsel David Lujan filed a notice of appearance as co-counsel in this matter as well as a waiver by Smith of any conflict with Lujan and of any objections to Lujan's name appearing in any exhibits. (Not. of Appearance, ECF No. 350.) At the first pretrial conference held on August 18, 2021, the Court raised the issue that there was a standing order disqualifying Lujan and that he could not circumvent the Court's order by merely filing a notice of appearance. (Min., ECF No. 352.) Defendant Smith thereafter filed a motion for the readmission of Lujan arguing that the Sixth Amendment provided a right to counsel of choice and that with Smith's waivers, Lujan should be permitted to be a part of the defense team. (ECF No. 353.) The Government opposed the motion. (ECF No. 354.)

The Court heard the motion on August 27, 2021 and denied Defendant's second motion for reconsideration of the Court's order disqualifying Lujan as counsel for Smith. (Min., ECF No. 357.) In doing so, the Court recognized attorney Lujan's successful career as a defense attorney and the importance of honoring an accused's Sixth Amendment right to counsel of choice. Nonetheless, the Court recognized that the Sixth Amendment right to counsel of choice is not absolute. *See Wheat v. United States*, 486 U.S. 153, 159 (1988) ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects" and that "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

4

In denying the motion, the Court balanced the right to counsel of choice with the needs of fairness. *See id.* at 160 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) ("We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness"). Again, the Court could not fairly permit Lujan to reenter as counsel for Smith when Smith could be unfairly prejudiced should a juror compare his conduct as GHURA legal counsel to Lujan's conduct. Defendant Smith's waivers to any conflict were also insufficient, because as recognized in *Wheat*, "[n]or does a waiver by the defendant necessarily solve the problem" given "the apparent willingness of Courts of Appeals to entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." 486 U.S. at 161-62. To protect Smith's interests at trial and the integrity of the proceedings, the Court could not permit Lujan to re-enter even as co-counsel. Defendant also failed to provide any basis under Federal Rule of Civil Procedure 60(b) warranting relief from the Court's orders.

Less than a week after denying Defendant's motion for the reentry of Lujan, Defendant filed a motion to dismiss, seeking my disqualification on the premise that Ninth Circuit Chief Judge Sidney Thomas' designation of a current judge of the District Court for the Northern Mariana Islands to sit as a judge for the District Court of Guam exceeded the statutory scope permitted under 48 U.S.C. § 1424b. (Mot. to Dismiss, ECF No. 358.) After expedited briefing on the matter and hearing arguments on the motion, the Court orally denied the motion on September 30, 2021. (Am. Min., ECF No. 373.) In light of the statutory framework and legislative history under Title 48 of the United States Code,

5

the Court concluded that a current judge of the District Court for the Northern Mariana Islands is a "district judge of the ninth circuit" and that Congress granted the Chief Judge of the Ninth Circuit authority to designate a judge from the District Court for the Northern Mariana Islands to hold court in the District Court of Guam. (Order Denying Mot. to Dismiss, ECF No. 375.) That same day, the Court also denied Defendant's oral motion to stay proceedings given his failure to demonstrate any basis for a stay. (Am. Min., ECF No. 373.) The Court also denied his oral motion to continue trial due to the COVID-19 pandemic without prejudice. (*Id*.)

The next day, Defendant filed a petition for a writ of mandamus with the Ninth Circuit and/or emergency motion to stay proceedings, arguing that a current judge of the District Court of the Northern Mariana Islands is without authority to preside over this case. (ECF No. 374.) At a status hearing held on October 6, 2021 to discuss pretrial matters, Defendant again orally renewed his motion to continue or stay trial due to the COVID-19 pandemic. (Min., ECF No. 383.) This Court again denied that motion given that measures were being implemented in the district courthouse, including social distancing and requiring masks, to prevent the spread of COVID-19. The day after, Defendant filed a motion for reconsideration of the Court's oral denials of Defendant's motions to continue trial. (ECF No. 385.) At the final pretrial conference held on October 8, 2021, the Court denied Defendant's motion for the same reasons previously articulated. (Min., ECF No. 387.) Defendant also raised issues during this pretrial conference regarding a potential conflict of the Government calling Ray Topasna as a witness, at which time the Court was unclear as to what Defendant was referring to given that this issue was raised orally without any brief. The Court therefore instructed Defendant to raise his issue in writing so the Court could properly rule on it.

Defendant filed a motion in limine the following week raising a potential conflict regarding Ray Topasna being a "purported client" of the Government given the Government's role in the *qui tam* matter filed in 2015 involving Ray Topasna as the relator against the same Defendant Mark Smith as well as other defendants. *See* Mot. in Limine, ECF No. 398; *United States of America, by and through qui tam relator Ray Sanchez Topasna v. Guam Housing and Urban Renewal Authority,* Civil Case No. 1:15-cv-00040 (D. Guam). Defendant raised concerns about the Government's thirteen memoranda that were shared in camera with the *qui tam* Court in support of its applications to extend the seal and deadline for electing whether to intervene in the *qui tam* matter and raised concerns that these sealed memoranda potentially gave me, the judge presiding over both matters, knowledge of disputed evidentiary facts outside of this criminal case. Defendant also contended that the memoranda may have involved improper *ex parte* communications and the improper use of grand jury materials. Thus, in his motion, Defendant "respectfully ask[ed]" the Court to "provide Smith and counsel with the sealed United States representations" and expressly noted that "Smith does not object to the Court providing counsel with the needed information under seal so that all such information remains confidential." (Mot. in Limine at 5.)

In response to the motion, the Government made clear that Mr. Topasna was represented not by the United States, but by separate private counsel Jeffrey Moots. (Response to Mot. in Limine, ECF No. 402.) Notified of these concerns, the U.S. Attorney's Office in the *qui tam* matter moved the *qui tam* Court to partially lift the sealed memoranda so that Defendant Smith in this criminal matter could have access to and examine the sealed documents. (Mot. to Partially Lift, ECF No. 84, Civil No. 15-cv-00040). The undersigned thereafter granted the motion to partially lift (ECF No. 85, Civil No. 15-

7

cv-00040), in large part due to Defendant Smith's own request that these documents be made available to him. At the status hearing held on October 15, 2021, counsel for Defendant again requested that these documents be made available to the defense and informed the Court that the Government had not yet provided defense team those documents despite the Court's order permitting it to do so. (Min., ECF No. 405.) Thus, to facilitate the process, the Court's case administrator emailed to both parties these previously sealed memoranda bearing the stamp marks of "CONFIDENTIAL," and in its email made clear that these "documents are confidential and cannot be disseminated." (Ex. A, ECF No. 415.) That same day, the Ninth Circuit also denied Defendant's petition for a writ of mandamus and/or emergency motion for a stay of proceedings.[1] (ECF No. 404.)

On October 18, 2021, the day before jury selection was to begin, Defendant filed a motion for reconsideration of the Court's denial of a trial continuance, noting that Defendant Smith was contacted by his doctor "regarding Smith's exposure to an individual ('P1') who lives with and cares for an individual ('P2') who tested positive for COVID-19 on Saturday, October 16, 2021." (Mot. for Reconsideration at 1-2, ECF No. 407.) According to the publicly filed motion, "Smith's contact with P1 was extensive and continuous during the relevant time period" and "Smith was instructed to self-quarantine and remain isolated until Smith could get tested on Wednesday, October 20, 2021, the fifth (5th) day of exposure." (*Id*. at 2.) Smith's contact with the defense team was also "extensive and continuous throughout [the] past weekend as they were preparing for trial." (*Id*.) The Court held a

---

[1] Yet Defendant overconfidently asserts that I am "presid[ing] over proceedings virtually certain to be overturned and viewed as structural error." (Mot. at 9.)

8

status conference that same day, granted the short continuance, and reset the trial to Friday, October 22, 2021. (Min., ECF No. 410.)

The follow day, on October 19, 2021—three days before the new trial date and on the very day that trial was originally to be begin—Defendant filed a motion to recuse me pursuant to 28 U.S.C. §§ 144 and 455 on the basis of bias and partiality. (Mot., ECF No. 411.) The publicly filed motion and Defendant Smith's affidavit reference certain portions of the sealed *qui tam* memoranda, in direct contravention of the Court's directives that the documents were to remain confidential.[2] (*See* Smith Aff., ECF No. 412.) Included with the motion are counsel Darleen Hiton's[3] declaration that the motion and affidavit are filed in good faith. (Hiton Decl., ECF No. 413.) Defendant also filed an erratum to include an email exhibit of the court staff sending the requested sealed documents to both parties. (Erratum, ECF No. 415.) The government immediately filed an initial opposition. (Opp'n, ECF No. 416.) The Court *sua sponte* addressed the motion at a status conference on October 20, 2021 and DENIED the motion, while continuing trial to Monday, October 25, 2021 given other concerns raised that day. (*See* Min., ECF No. 419.) While the Court adopted the Government's reasoning contained in its brief on the record, the Court nonetheless now sets forth this decision memorializing its reasons. Jury trial has additionally since been continued to October 28, 2021 upon Defendant's motion. (Order, ECF No. 436.)

/ /

---

[2] This violation of the Court's orders may warrant sanctions.
[3] Prior to filing this motion, Ms. Hiton never properly filed a notice of appearance as Smith's counsel for this matter.

9

## II.    LEGAL STANDARD

Under 28 U.S.C. § 144, a judge is under a duty to proceed no further "[w]henever a party to any proceeding in a district court makes and files a *timely and sufficient* affidavit that the judge before whom the matter is pending has *a personal bias or prejudice* either against him or in favor of any adverse party." (Emphasis added). The affidavit must "state the fact and the reasons for the belief that bias or prejudice exists" and is to be "accompanied by a certificate of counsel of record stating that it is made in good faith." *Id*.  28 U.S.C. § 455 also requires a judge to disqualify him or herself where his or her "impartiality might reasonably be questioned," which may include "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455; *see U.S. v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980), *as amended on denial of reh'g* (Apr. 28, 1980) (noting that "section (b)(1) [of 28 U.S.C. § 455] simply provides a specific example of a situation in which a judge's impartiality might reasonably be questioned pursuant to section 455(a)" (internal quotations omitted)).

"'It is well established in the [Ninth Circuit] that a recusal motion must be made in a timely manner.'" *United States v. Mikhel*, 889 F.3d 1003, 1026 (9th Cir. 2018) (quoting *E. & J. Gallo Winery v. Gallo Cattle Co*., 967 F.2d 1280, 1295 (9th Cir. 1992)). While there is no per se rule on timing, "such motions should be filed with reasonable promptness after the ground for such a motion is ascertained." *Id*. (internal quotation and citation omitted). "Where unexplained delay in filing a recusal motion suggests that the recusal statute is being misused for strategic purposes, the motion will be denied as untimely." *Id*. (internal quotations and citation omitted).

In reviewing an affidavit filed under § 144, the judge must accept the facts alleged as true. *Willenbring v. United States*, 306 F.2d 944, 946 (1962). However, the Ninth Circuit has also held that the judge against whom an affidavit of bias is filed may properly decide whether the affidavit is legally sufficient, and only if the affidavit is legally sufficient is the judge under a duty to proceed no further. *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978); *cf. SEC v. Bilzerian*, 729 F.Supp.2d 19, 22 (D.D.C. 2010) ("To deter unhappy litigants from abusing the recusal statute and to promote faith in the judicial system, courts have emphasized that a judge has as much an obligation *not* to recuse himself where there is no reason to do so as he does to recuse himself when proper." (emphasis in original) (citation omitted)).

To be legally sufficient, the affidavit must meet three requirements: "[i]t must state facts which if true fairly support the allegation that bias or prejudice stemming from (1) an extrajudicial source (2) may prevent a fair decision on the merits," and (3) the facts must substantially support an allegation of bias. *Azhocar*, 581 F.2d at 739-40. "[J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Furthermore, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

Whether under 28 U.S.C. § 144 or § 455, the "substantive standard for recusal . . . is the same: 'Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997) (quoting *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986)). "'The reasonable

11

person is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer.'" *Mikhel*, 889 F.3d at 1027 (quoting *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)). "The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Id*. (internal quotation omitted).

## III. DISCUSSION

Defendant seeks my recusal on the grounds of bias and inability to be impartial because I am concurrently presiding over a related *qui tam* matter and because Smith filed a motion challenging my authority to sit as a designated judge in the District Court of Guam. For the reasons discussed below, Defendant's arguments are without merit. Given that this motion heavily relies on the *qui tam* matter, a brief discussion of that case is warranted here.

### A. *Qui tam* case[4]

On November 6, 2015, Ray Sanchez Topasna filed a civil action in this Court under the *qui tam* provisions of the Federal False Claim Act against Guam Housing and Urban Renewal Authority (GHURA) as well as seven GHURA board members and three attorneys, including Defendant Mark Smith. *See* Compl., *United States of America, by and through qui tam relator Ray Sanchez Topasna v. Guam Housing and Urban Renewal Authority, et al.,* Civil Case No. 1:15-cv-00040 (D. Guam, Nov. 6, 2015), ECF No. 1; 31 U.S.C. § 3730(b)(1) (allowing a private person under the False Claims Act to bring a civil action for false claims for him or herself and for the United States Government, with the

---

[4] Citations to the ECF numbers in this "*Qui tam* case" section are in reference to Civil Case No. 1:15-cv-00040.

action being brought in the name of the government).  As required by statute, the complaint was filed in camera and was to remain under seal for at least 60 days, during which time the Government is to decide whether to elect to intervene. 31 U.S.C § 3730(b)(2).

Chief Judge Frances Tydingco-Gatewood of the District Court of Guam shortly thereafter recused herself pursuant to 28 U.S.C. § 455(b)(5)(iv) (Order of Recusal, ECF No. 3), and I was designated to preside over this matter (Notice of Designation, ECF No. 4). The Government on March 24, 2016[5] then filed its first motion for extension of time for electing to intervene along with a supporting memorandum *ex parte* and under seal (ECF Nos. 8 and 9), as expressly permitted by statute. *See* 31 U.S.C § 3730(b)(3) ("The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions *in camera*." (emphasis added)). For good cause shown and in balancing the needs for the Government to investigate to make an informed decision as to whether to intervene with the public's interest in prompt resolution of claims, I granted a 120-days extension rather than the 180-days requested. (ECF No. 10.) The Government also filed another application for extension of time *ex parte* and under seal on July 26, 2016 (ECF No. 11) followed by another application for extension of time on January 23, 2017 (ECF No. 14), both supported by memoranda (ECF Nos. 12, 15). In their memoranda, the United States only briefly detailed its investigation status so that the Court was aware of why it was requesting an extension. For

---

[5] The Government has 60 days from service of the complaint to decide whether to elect to intervene. 31 U.S.C § 3730(b)(2). The Government was not served until January 27, 2016. (*See* ECF No. 8.)

13

good cause shown, I granted both motions. (ECF Nos. 13, 16.) From May 23, 2017 to July 30, 2019, the Government filed ten other motions for extensions of time supported by memoranda *ex parte* and under seal pursuant to statute (ECF Nos. 17-18, 20-21, 24-25, 27-28, 31-32, 35-36, 40-41, 45-46, 47-48, 50-51), and Magistrate Judge Joaquin V.E. Manibusan, Jr. granted those requests (ECF No. 19, 22-23, 26, 29, 34, 37, 42, 46, 49, 52). Notably, I did not sign off on any such orders granting an extension after an Indictment was filed in this criminal matter, which was on March 14, 2017.

On August 22, 2019, the United States elected to partially intervene in the matter as to Defendants Mark Smith and Glenn Wong, and requested that the complaint, their notice of election, and the attached proposed order be unsealed while all other papers remain under seal. (ECF No. 53.) The following week, Judge Manibusan ordered that the complaint as well as the case be unsealed, except that the 13 memoranda at issue as well as the latter three motions for extension (ECF Nos. 9, 12, 15, 18, 21, 25, 18, 32, 36, 40-41, 44-46, 47-48, 50-51) remain sealed and not served upon the defendants. (*See* Order of Partial Unsealing, ECF No. 54.) The complaint as well as all other previously filed documents were ordered to be served on the defendants. (*Id.*) Defendant Mark Smith was personally served on September 27, 2019 (*see* Summons Returned Executed, ECF No. 66), and Smith even signed a stipulation (*pro se*) extending time to file an answer or responsive pleading (ECF No. 67). Based on a stipulation between the United States, Smith, and Glenn Wong and another stipulation between the United States and other defendants, the *qui tam* case was then stayed pending resolution of this criminal matter. (ECF Nos. 72-74.) Two years later, on October 15, 2021, upon the Government's motion to partially lift the sealed documents (ECF No. 84), and upon Defendant Mark Smith's express request in this criminal matter for access to those documents, the Court granted the

14

request for a partial lift of the seal (ECF No. 85). After granting Defendant's request for access to the documents and making clear that the documents were to be kept confidential, Defendant now suddenly attempts to use the *qui tam* case as a baseless attempt to recuse me and delay trial. The Court will not indulge this.

**B. Defendant's motion along with his affidavit is untimely**

First, the Court finds that Defendant's motion and affidavit are untimely. Defendant's motion represents that: "Defendant Smith did not envision there was any sufficiently actionable bias in this case until after Chief Judge Ramona V. Manglona's ('Chief Judge Manglona') recent representations and administration of the current proceedings as applied to *qui tam* Relator Ray Topasna ('Topasna') just days ago." (Mot. at 1.) Defendant mischaracterizes what the Court said regarding his allegations of a conflict orally raised at a status hearing in the criminal case as a denial of not knowing anything regarding the *qui tam* case. The Court, however, was merely unclear as to the basis for a potential conflict of interest issue between the U. S. Attorney's Office and the relator who would potentially testify in the criminal action that Defendant's counsel raised orally without any prior notice or written motion. (Mot. at 5-6.) Defendant's current motion appears focused on the Court's "surprised" unsealing of the *qui tam* matter as the trigger for the sudden revelation of a bias. But the reality is that the *qui tam* case was ordered unsealed on August 26, 2019 by Judge Manibusan, and Mark Smith, representing himself pro se in the *qui tam* matter, was served the complaint as well as many of the previously filed documents on September 27, 2019. Defendant himself was therefore on personal notice of the matter as early as over two years ago and on notice of my involvement in the case. A simple look at the docket which was made public in August 2019 would have also revealed my role

with the case. Four months after the *qui tam* case was unsealed, the Law Offices of Phillips & Bordallo, P.C., by and through Michael Phillips, filed an entry of limited appearance for this criminal case (ECF No. 310), and after the December 6, 2019 status hearing, became counsel of record for Smith. Yet Defendant waits until the eve of trial almost two years later to file this motion. This unexplained delay suggests that the motion is being misused for a strategic purpose. *See Mikhel*, 889 F.3d at 1027. This delay alone may warrant denial of the motion. *See* 28 U.S.C. § 144 (requiring an affidavit to be timely *and* sufficient).

### C. Defendant's affidavit is legally insufficient

Nonetheless, Defendant Smith's legally insufficient affidavit lends further support for why this motion should be denied. As noted previously, for an affidavit to be legally sufficient, (1) the facts (if true) must lend substantial support for an allegation of bias that (2) stems from an extrajudicial source and (3) that may prevent a fair decision on its merits. *Azhocar*, 581 F.2d at 739-40. Defendant's affidavit fails to meet these requirements, as further explained below.

Defendant Smith's affidavit properly begins with procedural facts. It states that Ray Topasna filed in November 2015 a complaint in camera and under seal under the Federal False Claims Act against Smith in Civil Case No. 1:15-cv-00040; that Chief Judge Tydingo-Gatewood recused herself in December 2015; that I was appointed to preside over this *qui tam* matter; and that I concurrently preside over that *qui tam* matter as well as this criminal matter in 1:17-cr-00020. (Smith Aff. ¶¶ 4-7.) The affidavit also states that between December 2015 and September 2019, the United States Attorney's Office conducted extensive depositions and investigations to determine whether to intervene in the *qui tam* matter, and that it filed 13 applications and sealed memoranda detailing its

progress and investigating findings, in which the memoranda were sealed to Defendant Smith until October 15, 2021. (*Id*. ¶¶ 8-9.)

However, Defendant's affidavit then begins to depart from facts and leaps to conclusory allegations. Defendant begins to assert that because I did not obtain his consent in the *qui tam* matter to suddenly and partially unseal the memoranda, I acted and "worked together" with the United States in an "apparent response" to and "attempt to defeat" Defendant's motion in limine in an "ex parte collaboration"—in a manner that Defendant states is "unexplained and highly unethical." (*Id*. ¶¶ 10-11, 18). Defendant then continues to cite excerpts from the 13 sealed memoranda regarding the United States' status on determining whether to intervene in the *qui tam* matter, and contends that the United States improperly used the *qui tam* case to compile evidence against Smith and yet did not disclose discovery from that matter to Defendant Smith. (*Id*. ¶¶ 13-14.) Defendant then presumes that the law required me to approve all settlements and disclose settlements with other defendants from the *qui tam* matter, and that because I did not share any settlements in the *qui tam* matter, this conflicts with my role as a neutral judge. (*Id*. ¶ 14.) Defendant further asserts that I denied knowing anything at all about Ray Topasna, that I was the "sole Judge" overseeing the *qui tam* matter over the years, that I presided over the investigation in the *qui tam* matter, and that I failed to disclose my role in the "secret" *qui tam* case. (*Id*. ¶¶ 15, 17, 25.) In attempting to paint a picture that I worked in cahoots with the United States to allow them additional time to gather further evidence against Defendant Smith, Defendant spuriously states "I granted a mistrial which allowed the United States more than enough time to complete their investigation" and presumes that there were further *ex parte* communications separate from the memoranda filed. (*Id*. ¶¶ 17, 24.)

17

Finally, in a further attempt to recuse me, Defendant makes the conclusory leap that his filing of a motion to dismiss challenging my authority to sit in the District Court of Guam "affects [me] personally and extensively outside of the present case" such that a reasonable person would question my bias. (*Id.* ¶¶ 19, 21.)

The Court is to typically accept the facts in an affidavit as true, *Willenbring v. United States*, 306 F.2d at 946, but Defendant's affidavit is profuse with unsupported conclusions, and this Court need not accept those unsubstantiated leaps and speculations as true. *See Sibla*, 624 F.2d at 868 ("[M]ere conclusory allegations, such as claimant's, are insufficient to support a claim of bias or prejudice such that recusal is required."). Contrary to counsel's assertion at the motion hearing that Defendant is not alleging that I engaged in anything "improper," Defendant's affidavit, as well as the motion, make serious conclusory allegations that I engaged in impermissible *ex parte* communications and worked in cahoots with the Government to "defeat" Defendant's motion merely because I presided over another case, kept documents sealed as required by the law, and then unsealed documents that Defendant specifically requested for a limited purpose. *See e.g.*, Mot. at 2 ("Judge Manglona prevented Smith from pursuing substantial information through discovery both Topasna and the United States would have revealed but for Judge Manglona keeping the *qui tam* case secret."). These are indeed serious allegations of misconduct against any judge. But Defendant's motion asks the Court to take Herculean leaps from the case's procedural background to reach these unsubstantiated conclusions. No reasonable person would conclude bias by me or question my impartiality on these bases alone.

Defendant's arguments are devoid of the reality that judges commonly preside over related cases all the time, and even over the same cases multiple times. As highlighted by the Supreme Court

in *Liteky*, 510 U.S. at 551, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *See United States v. $292,88.04 in U.S. Currency*, 54 F.3d 564, 567 (9th Cir. 1995) (finding that the fact that a judge presided over two related criminal trials does not disqualify him from the civil forfeiture case). Moreover, it is not uncommon or unusual for a judge to sign off on warrants that contain information from the investigations and then preside over that same criminal matter. Yet Defendant relies on cases regarding prejudice from the premature releasing of presentence investigation reports to presiding judges when nothing close to the extrajudicial information contained in presentence reports, such as prior criminal history, family history, education, and financial situation, are prevalent here. (*See* Mot. at 3-4; Fed. R. Crim. P. 32.)

Moreover, as to the sealing and "secret" nature of the *qui tam* matter at its initial stage, the United States Congress allows for this procedure as shown by the statute that expressly provides for the documents to be filed in camera and to remain under seal. *See* 31 U.S.C § 3730(b)(2) ("The complaint shall be filed in camera, *shall remain under seal* for at least 60 days . . ." (emphasis added)); § 3730(b)(3) ("The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal . . . Any such motions may be supported by affidavits or *other submissions in camera*." (emphasis added)). Yet Defendant contends that by the Government filing its 13 memoranda *ex parte* and under seal as permitted by law, the Government and I participated in impermissible *ex parte* communications. A simple reading of the statute and the record would indicate otherwise. Defendant then goes on highlighting that I or the United States never submitted some sort of declaration explaining to him the extent of our contacts (Smith Aff. ¶ 25), speculating

19

that there were *ex parte* communications outside the permissible filings. But Defendant fails to cite to any authority that places a burden on a party or a judge to submit a declaration that he or she *did not* engage in improper *ex parte* communications, when the Model Rules of Professional Conduct and Model Rules of Judicial Conduct already prohibit attorneys and judges from doing so. *See* Model Rules of Pro. Conduct r. 3.5 ("A lawyer shall not: (b) communicate ex parte with [a judge, juror, prospective juror or other official] during the proceeding unless authorized to do so by law or court order."); Guam Rules of Pro. Conduct r. 3.5 (noting same); Model Rules of Judicial Conduct r. 2.9(A) ("A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter except as follows . . ."). Defense counsel's preconceived idea that *ex parte* communications are common in federal courts is entirely misplaced.  Defendant also makes a legal argument that because the False Claims Act requires any settlements to be approved by the Court, I was obliged to *disclose* any settlement reached by the parties in the *qui tam* matter. Yet Defendant fails to cite to any authority supporting such a contention, and none of the parties in fact even sought the Court's approval of any settlement.

Moreover, Defendant attempts to portray an image of me scheming with the Government by highlighting that the Court granted a mistrial in 2017 which allowed the Government more time for additional investigation. However, that these two events correlated in time separately does not mean that the Court granted a mistrial for the purpose that the Government could obtain additional time for investigation against him. Defendant merely states his own speculative belief without providing any adequate facts. A mere reading of the Court's prior decision and order demonstrates that the Court

declared a mistrial out of manifest necessity based on matters that evolved during trial such as Lujan's conflict of interest. (*See* Order Declaring Mistrial, ECF No. 174.) The mistrial in this matter has nothing to do with the *qui tam* matter, wherein there were ten other defendants and not just Smith that the Government was conducting investigations on before it determined whether to elect to intervene. A complete and thorough review of the two cases readily show that Defendant's misguided attempts to causally link the *qui tam* matter with this criminal case do not support a claim of bias or prejudice.

Defendant's assertions are also very puzzling and inconsistent. Defendant seems to oddly contend that I improperly prevented Defendant from obtaining substantial information through discovery in the *qui tam* case by keeping the case "secret" and thereby preventing him from obtaining exculpatory evidence for his defense in this criminal matter. But an obligation to disclose all favorable evidence to a Defendant belongs to the Government, not a judge. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Yet on the record at the hearing, counsel Hiton made clear that Defendant is not alleging any *Brady* violation by the Government. Defendant's reasoning fails to make any rational sense. Similarly, Defendant contends that my alleged sealing of the *qui tam* case somehow prevented his attorneys from obtaining "enormous and extensive evidence that would otherwise be available to Defendant Smith" but for me in particular ordering the case sealed, thereby depriving Defense Counsel the key evidence that would "rise to the level of malpractice and ineffective assistance of counsel." (Mot. at 20). However, as Ms. Hiton conceded at the motion hearing, Magistrate Judge Manibusan was the judge who independently considered the last 10 motions to maintain the matter under seal and who issued those last orders granting the government extensions of time before finally unsealing the case in 2019. Yet Defendant and his attorney failed to acknowledge or disclose this undisputed fact in

the filings and rather focused on the fact that I was the "sole" presiding judge over the *qui tam* matter as a whole. Defendant merely cherry-picked certain parts of the record to make his arguments and wholly ignored key and glaring parts of the record. As attorneys admitted to practice law in this district court, both Smith and Hiton are officers of the court and owe a duty of candor to the court. *See* Model Rules of Pro. Conduct r. 3.3 (Candor Toward the Tribunal). When declaring and certifying good faith of a motion, attorneys must be fair and complete in their representations.

Finally, Defendant accuses this Court of colluding with the Government in trying to "defeat" his motion in limine by partially unsealing the sealed memorandum in the *qui tam* matter without Smith's consent in the *qui tam* matter. This accusation is baseless for two reasons. First, Defendant Smith himself expressly requested for those documents in his motion in limine, and the Court granted that request by partially lifting the seal on those sealed documents in the *qui tam* matter for the limited purpose of letting Defendant view those documents for this criminal trial. Yet Defendant would like the Court to delineate between the *criminal* Defendant Mark Smith and the *civil* Defendant Mark Smith, such that an explicit request for those documents from one does not equate to consent by the other. The Court finds this distinction absurd. Second and more significantly, nothing suggests that the Court was required to obtain Defendant's consent in order to partially unseal documents in a *qui tam* matter, where the documents were filed *ex parte* and in camera *by the Government*—not the Defendant—as permitted by statute.

In sum, Defendant's arguments based on speculation merely because I presided over the *qui tam* case fails to support a claim of—or even a slight appearance of—bias or prejudice against Defendant. *See Liteky*, 510 U.S. at 548 ("[I]t is not the reality of bias or prejudice, but its appearance").

22

The mere reference to me presiding over another proceeding in a judicial capacity without adequate facts of bias or prejudice is insufficient. Nor does it evince that I had any knowledge of disputed evidentiary facts, where notably the 13 memoranda only detailed the United States' investigation *status* in its determination on whether to intervene and involved no disclosures of grand jury materials or any other discovery material actually obtained. No reasonable, well-informed person would view a presence of partiality or question my ability to render a fair decision on its merits based on Defendant's vague allegations, especially where I am not the fact-finder in this matter.

As to Defendant's allegation of bias or prejudice based on his recent motion to dismiss on the grounds that Ninth Circuit Chief Judge Sidney Thomas lacked authority to designate me to sit in the District Court of Guam, that allegation likewise fails to establish bias and clearly does not stem from an extrajudicial source, as Defendant contends. (Mot. at 8). Defendant contends that just because he filed a motion challenging my designation, there is an appearance of impartiality. Such a leap, without any logical reasoning, is speculative. Furthermore, for bias to stem from an extrajudicial source, it must stem "from sources other than the judicial proceeding at hand." *Clemens v. U.S. Dist. Ct. for Central Dist. of California*, 428 F.3d 1175, 1178 (9th Cir. 2005). That is, the bias must stem from "some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). But a motion filed within this very case and the Court's denial of the motion is *not* extrajudicial. *See Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . Almost invariably, they are proper grounds for appeal, not for recusal."); *see also Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) ("A judge's previous adverse ruling alone is not sufficient bias."). Nor does the Court's disposition

denying Defendant's motion based solely on statutory interpretation indicate some sort of pervasive bias based on "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Case law makes clear that a party's simple disagreement with my rulings is insufficient to warrant my recusal. Quite frankly, Defendant has utterly failed to demonstrate any bias or how any of his bases serve as an impediment to my ability to make decisions fairly on the merits. Defendant's affidavit is wholly and legally insufficient.

Given that Defendant's affidavit is legally insufficient—and the motion itself is frivolous— Defendant's request that this motion be heard by a different judge is DENIED. (*See* Mot. at 22; Smith Aff. ¶ 26.) As the Ninth Circuit made clear, judges at whom a motion to recuse is targeted may first determine the legal sufficiency of an affidavit, and only after it is legally sufficient is there a duty to recuse. *See Azhocar*, 581 F.2d at 738. Judges should not recuse themselves from a case or a recusal proceeding merely because a defendant says so without sufficient facts substantiating a claim of bias or lack of impartiality. To do so would pose serious threats for abuse and reward a defendant for manufacturing recusal to delay proceedings. As former Chief Judge Royce Lamberth perfectly articulated in *Securities and Exchange Commission v. Bilzerian*, 729 F.Supp.2d at 22:

> If courts reward parties who—fearing imminent adverse consequences— file meritless § 455(a) motions in hopes of postponing the inevitable, they invite every desperate litigant willing to "cry wolf" to flood the courts with baseless, exploitive recusal motions. Such a witch hunt would threaten the public's confidence in judicial fairness that § 455(a) is supposed to safeguard.

/ /

/

## IV.    CONCLUSION

There have either been a series of very unfortunate events or intentional attempts to delay trial. Defendant's multiple failed motions within days prior to the commencement of the jury trial culminated in this motion to recuse. I find this motion and affidavit suspect of an attempt to delay the inevitable of a trial. The public, and not just a defendant, has an interest in a speedy trial, and trial must move forward. For the reasons stated on the record and herein, Defendant's motion to recuse is DENIED.

IT IS SO ORDERED this 10th day of November, 2021.

_____
Ramona V. Manglona
Designated Judge