# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 17-00020 |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION DENYING MOTION FOR A MISTRIAL** |
| MARK S. SMITH, | |
| Defendant. | |

In yet another motion, Defendant Mark Smith on October 31, 2021 moved for a mistrial pursuant to Federal Rules of Criminal Procedure 26.3 and 43. (Mot., ECF No. 451.) Defendant challenges the Court's pre-venire excusal of jurors based on hardship outside the presence of the jury[1], arguing that the Court's excusal of those jurors violates Federal Rule of Criminal Procedure 43 that entitles a Defendant to be present at all stages of trial. The Government promptly filed its response, (Opp'n, ECF No. 453), and the Defendant filed a reply (Reply, ECF No. 458). The Court held a hearing on the matter on November 3, 2021, during which time it DENIED Defendant's motion. (Min., ECF No. 462.) The Court now issues this memorandum decision setting forth its reasoning for denying the motion.

\\

\

---

[1] Defense counsel conceded during oral arguments that Defendant was not challenging the pre-venire excusal of jurors based on good cause that the parties stipulated to.

1

# I. BACKGROUND

On August 18, 2021, the Court held a pre-trial conference, during which time the parties discussed trial matters, including the anticipated length of trial and jury summons. (Min., ECF No. 352.) To facilitate jury selection given the numerous witnesses involved in the case, including with the Guam Housing and Urban Renewal Authority (GHURA), and the case's factual relation with the Section 8 Housing Choice Voucher program, the parties agreed to a procedure in which jurors summoned would also be mailed a juror qualification questionnaire (the Pre-qualifying Questionnaire for Jurors) that discussed the basic substantive nature of the case and the parties and witnesses involved, and in which summoned jurors would respond regarding their basic knowledge of the case and affiliations to involved persons. The parties also agreed to a COVID-19 questionnaire (the COVID Questionnaire) being sent to the jurors in light of the pandemic.

The questionnaires were subsequently mailed out to 120 potential jurors who were summoned. Potential jurors started responding to the summons by seeking temporary excusals based on hardship and/or due to COVID-19. The Court's jury administrator relayed those excusal requests to me, and upon review of their requests, I granted some, but not all, requests.

During the hearing on September 30, 2021 (Am. Min., ECF No. 373), the Court informed the parties that it excused a handful of jurors who had written in requests for excusal due to relocation, health conditions, or age exemption. (Tr. at 72:19–72:25, ECF No. 376.) During this time, Defendant requested copies of the Court's decision to excuse those certain jurors from the panel. (*Id*. at 74:12–74:19.) The Court notified counsel that "in due course you're going to get it, but I want to focus on the ones that have not been excused." (*Id*. at 74:24–75:1.) When the Court then inquired defense

counsel whether he was challenging the court's decision to excuse certain jurors, counsel responded, "I don't know. Your Honor. Obviously I want to see that and not have it -- not be raised in case there is a situation." Counsel never expressly indicated that he was challenging the Court's excusal of jurors in violation of the Jury Selection and Service Act or under the District Court's Jury Plan. The Court then proceeded with informing the parties that it denied without prejudice a juror's request for excusal as a pastor, given that such religious position did not fall under an automatic exemption under the Jury Plan. (*Id*. at 75:10–75:23.)

Subsequent to the hearing, the Court's jury administrator provided counsel for both parties access to the responses to the Pre-qualifying Questionnaire for Jurors and the COVID Questionnaire, and continually sent counsel more responses as they came in to the Court, so that the parties could submit their requests and/or stipulate to jurors that should be excused for cause. The Court again discussed this procedure at the final pre-trial conference held on October 8, 2021 (Min., ECF No. 387), and the parties subsequently submitted their list of jurors to excuse as well as their stipulated list of jurors to excuse. (*See* ECF Nos. 388, 393-94.) While the parties' stipulated list of jurors to excuse for cause contained seven jurors, the parties had an additional 3 jurors whose names overlapped in both of their individual lists, such that the parties actually agreed to 10 jurors to be excused for cause. Between the parties' submissions and the first day of jury selection, the Court reviewed the parties' requests as well as the jurors' responses to the questionnaires, and excused the 10 jurors that the parties agreed to for cause. Aside from those 10 jurors as well as one juror that the Court excused for cause at Defendant's request given the jurors' relation to the government and witnesses in the case, the Court

only excused those jurors on the parties' individual lists who also indicated they had a hardship. Specifically, Question 47 in the Pre-qualifying Questionnaire for Jurors asked:

> The Court and the parties estimate that after a jury is selected this case may extend to four (4) weeks. Court hours will be from 8:00 a.m. to 5:00 p.m. Jury service is one of the highest duties and privileges of a citizen of the United States. Mere inconvenience or the usual financial hardships of jury service will be insufficient to excuse a prospective juror. Do you wish to apply to the court to be excused on the ground that jury service would be a serious hardship?

Other than those previously mentioned, the Court excused those jurors on either parties' list who had both a potential for cause reason and clearly had a hardship reason based on their response to Question 47. As summoned jurors began appearing for orientation, some continued to make written requests to the jury administrator seeking excusal based on hardship or COVID-19, and upon the administrator reviewing those requests with me, I granted those requests.

Thus, when jury selection finally began on October 28, 2021, the Court provided a list of 68 potential jurors for *voir dire* – meaning that a total of about 52 jurors have since already been excused or did not respond. While at the time the Court did not give the parties its reasons for excusing the jurors, neither parties inquired. Three days later, Defendant moved for a mistrial pursuant to Federal Rule of Criminal Procedure 26.3, arguing that the Court's excusal of jurors outside the presence of the Defendant violated Federal Rule of Criminal Procedure 43. (Mot., ECF No. 451.) The motion is supported by declaration of counsel Phillips (Phillips Decl., ECF No. 452) as well as a sealed declaration of the Defendant himself. The Government promptly filed its response a day later (Opp'n, ECF No. 453), and the Defendant filed a reply (Reply, ECF No. 458). The Court held a hearing on the matter on November 3, 2021 and denied Defendant's motion for the reasons expressed below.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 26.3, "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." "The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico v. Lett*, 559 U.S. 766, 774 (2010) (internal quotations and citation omitted); *see United States v. Sepulveda*, 15 F.3d 1161, 1184 (1st Cir. 1993) (noting that declaring a mistrial is generally a remedy of "last resort.").

## III. DISCUSSION

Defendant seeks a mistrial given the Court's excusal of potential jurors outside his presence, or alternatively seeks the "Court's scheduling jury selection and including Defendant Smith and/or Defense Counsel in decisions to dismiss jurors once, as in this case, the Court has already included them in the panel to receive and respond to the parties' and Court's Juror Questionnaire." (Mot. at 13.) In other words, the Defense wishes as an alternative for the Court to recall all the jurors already excused. The government in response argues that a mistrial is unwarranted and improper here, as Defendant's motion is "premature" and "based on ignorance" as to why the Court dismissed potential jurors rather than on grounds of the Court failing to comply with the Jury Selection and Service Act or this Court's Jury Plan. (Opp'n at 2.) Having reviewed the applicable law and considered the briefs and oral arguments by counsel, the Court finds that a mistrial and the Defendant's suggested alternative is not warranted in this matter.

5

The excusal of jurors is governed by the Jury Selection and Service Act, which provides enumerated reasons for which jurors may be excluded by the court, including "on the ground that such person may be unable to render impartial jury service or that his service as a juror would be likely to disrupt the proceedings" or "upon a challenge by any party for good cause shown." 28 U.S.C. § 1866(c). Of relevant part, the Act also provides that:

> [A]ny person summoned for jury service may be (1) excused by the court, or by the clerk under supervision of the court if the court's jury selection plan so authorizes, upon a showing of undue hardship or extreme inconvenience, for such period as the court deems necessary, at the conclusion of which such person either shall be summoned again for jury .
> . . .

*Id.*

Thus, as to excusals based on hardship, Congress expressly authorizes the court or a clerk under supervision to excuse jurors (1) upon a showing of undue hardship or extreme inconvenience and (2) if the court's jury selection plan authorizes so. Under the Act, a "clerk" includes "the clerk of the district court of the United States, any authorized deputy clerk, and any other person authorized by the court to assist the clerk in the performance of functions under this chapter." 28 U.S.C. § 1869(a). The Act also defines "undue hardship or extreme inconvenience" as great distance, grave illness in the family, "any other emergency which outweighs in immediacy and urgency the obligation to serve as a juror when summoned," or any other factor that the Court determines to constitute undue hardship or extreme inconvenience. § 1869(j). Furthermore, in circumstances where trial is anticipated to require more than thirty days of service, the court may consider "severe economic hardship to an

6

employer which would result from the absence of a key employee during the period of such service." *Id*.

Pursuant to and consistent with the federal Jury Selection and Service Act, the District Court of Guam's Jury Plan also expressly authorizes excusal based on undue hardship or extreme inconvenience.[2] Under the Plan, persons over 70 years of age; persons who have served as a grand or petit juror in a State, Federal, Territorial, or Commonwealth Court within the last two years; and persons who serve as "volunteer safety personnel" may categorically be excused under "undue hardship or extreme inconvenience" upon their individual written request for excusal. *See* D. Guam Jury Plan § 9.3. Moreover, in trailing with the corollary federal statute, Guam's Jury Plan permits the Chief Judge[3] and the clerk under the Court's supervision to temporarily excuse jurors upon a showing of "undue hardship or extreme inconvenience" as defined in 28 U.S.C. § 1869(j) and if a request is made in writing prior to the date summoned. *See* D. Guam Jury Plan § 9.4. Like the federal statutory counterpart, the Jury Plan also allows a juror to be disqualified, excused, or exempt from service for enumerated reasons, including by the Court on grounds that "such person may be unable to render impartial jury service or that his/her service as a juror would be likely to disrupt the proceedings," upon preemptory challenge, or for good cause. *Id*. § 9. The Plan also automatically exempts a class of individuals based on the nature of their profession: members in active service in the Armed Forces; members of fire or police departments; and "public officers in the executive, legislative, or judicial

---

[2] The Jury Selection and Service Act requires each United States District Court to devise a written plan for the random selection of jurors. 28 U.S.C. § 1863.
[3] Under this District's Jury Plan, "Chief Judge" includes a "designated district judge for the District Court of Guam." *See* D. Guam Jury Plan § 3.

7

branches of the Government of the United States, or any state, district, or territory, possession, or subdivision thereof, who are actively engaged in the performance of official duties, and who are elected to public office or directly appointed by one elected to public office." *Id*. § 9.2.

The Jury Selection and Service Act and Jury Plan for the District Court of Guam therefore make clear that a Court has authority to excuse jurors based on hardship, and nothing in the Jury Selection and Service Act or Jury Plan for the District Court of Guam requires that the Defendant be present in order for the Court to excuse jurors based on that hardship—contrary to Defendant's argument. While excusals by the Court based on challenges by the parties for good cause contemplate the parties' participation, nothing in the Act or Plan suggests that pre-venire excusals based on hardship require the parties' participation, especially where both the federal statute and this district's Jury Plan expressly authorize even the Clerk under supervision to excuse potential jurors based on hardship. *See* 28 U.S.C. § 1866(c); D. Guam Jury Plan § 9.4.

The Jury Selection and Service Act also makes clear that the exclusive means by which a defendant "may challenge any jury on the ground that such jury was not selected in conformity with [the Act]" are the procedures set forth in 28 U.S.C. § 1867. *See* 28 U.S.C. § 1867(e). Of relevance to this case is that:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, *the defendant may move to dismiss the indictment or stay the proceedings* against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

*Id*. § 1867(a) (emphasis added).

Instead of moving for dismissal or for a stay pursuant to these procedures, however, Defendant moves for a mistrial based on the excusal of jurors pursuant to Federal Rule of Criminal Procedure 43. Thus, it appears that Defendant is not challenging the Court's compliance with the procedures set forth in the Act, as Defendant has failed to cite to or reference the Jury Selection and Service Act or this Court's Jury Plan at all in its motion.[4] Rather, Defendant challenges the Court's pre-voir dire excusal of jurors outside the presence of Defendant as violating Federal Rule of Criminal Procedure 43, and relies on excessive block quotes from the Ninth Circuit case of *United States v. Reyes*, 764 F.3d 1184 (9th Cir. 2014) to support his position.

In *Reyes*, the Ninth Circuit noted that a criminal defendant has both a constitutional and statutory right to be present during trial proceedings. *See Reyes*, 764 F.3d at 1188; *see also United States v. Cazares*, 788 F.3d 956, 967-68 (9th Cir. 2015) (discussing generally the constitutional right to be present during voir dire and under Federal Rule of Criminal Procedure 43). The constitutional right to be present is derived from the Sixth Amendment's Confrontation Clause and the Due Process Clauses of the Fifth and Fourteenth Amendments, and provides that "[a] person charged with a felony has a fundamental right to be present at every stage of the trial . . . [including] the voir dire and empanelling of the jury." *Reyes*, 764 F.3d at 1188 (quoting *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir. 1994) (en banc)) (alterations in original). "The source of the statutory right is Federal Rule of Criminal Procedure 43, which provides in relevant part that 'the defendant must be present at . . . every

---

[4] Even when the Court ordered Defendant to file his reply and to specifically address these authorities and how they reconcile with Defendant's arguments, Defendant only referenced this Court's Jury Plan and incorrectly concludes without providing any legal analysis or authority that the Plan anticipates Defendant's presence for *any* excusals. (*See* Reply at 2-3.)

9

trial stage, including jury impanelment and the return of the verdict.'" *Id*. (quoting Fed. R. Crim. P. 43(a)(2)). The Court noted, however, that the statutory right is broader than the constitutional right to be present because "Rule 43 incorporated the more expansive common law understanding of the right as well as the constitutional standard." *Id*. at 1189 (citing *United States v. Rolle*, 204 F.3d 133, 137 (4th Cir. 2000)).

Thus, in evaluating whether the defendant's right to be present during trial proceedings was violated when the trial judge questioned a prospective juror about her ability to be fair and impartial in light of her personal experiences with bank robbery in a bank robbery case, at side bar and outside the presence of the defendant but with counsel present, the Ninth Circuit found that the defendant's constitutional right to be present was *not* violated. *Id*. at 1189-90, 1194-95. The circuit court found that defendant's absence did not undermine the fundamental fairness of the proceeding, and his attorney could have reliability relayed the details of the exchange to the defendant. *Id*. at 1194-95. The Ninth Circuit, however, found that the trial judge's exchange with the prospective juror outside the defendant's presence *did* violate Rule 43 when there was a standing objection from the defendant regarding his exclusion from the side bar conferences. *Id*. at 1189-90. The panel there reasoned that because voir dire is a trial stage included in the constitutional right to be present, and "Rule 43 encompasses the constitutional right to be present, voir dire is also a trial stage as the phrase is used in the rule." *Id*. at 1189 (citing *Campbell*, 18 F.3d at 671; *United States v. Rosales–Rodriguez*, 289 F.3d 1106, 1109 (9th Cir. 2002)). Thus, "[u]nder Rule 43, the defendant has a right to be personally present during voir dire of prospective jurors." *Id*. at 1190. When the trial judge questioned the prospective juror about her ability to be fair and impartial, the court improperly conducted "voir dire,"

as defined in Black's Law Dictionary, because "the conversation concerned whether she was 'qualified and suitable to serve on a jury.'" *Id*. at 1189 (quoting *Voir Dire, Black's Law Dictionary* 1710 (9th ed. 2009)). Nonetheless, the court in *Reyes* found that such error was harmless. *Id*. at 1193.

In reaching its conclusion in *Reyes*, the Ninth Circuit partially relied on its previous decision in *Bordallo*. *See Reyes*, 764 F.3d at 1189; *United States v. Bordallo*, 857 F.2d 519, 522 (9th Cir. 1988), *amended on reh'g by* 872 F.2d 334 (9th Cir. 1989). In *Bordallo*, the district judge excused some of the prospective jurors, including some on the basis of being friends or supporters of the defendant, while venire members were in the courtroom but outside the presence of the defendant and counsel before voir dire proceedings were to officially begin that day. *Bordallo*, 857 F.2d at 522. The defendant immediately objected to the excusal of those jurors when voir dire officially began, and then moved for a mistrial after opening statements. *Id*. The district judge denied that motion as the jurors excused were venire members not yet impaneled. *Id*. The Ninth Circuit concluded that the district judge committed error by excusing those potential jurors outside the presence of defendant and his counsel. *Id*. at 523. In reaching its conclusion, the court noted that "[t]here is authority that Rule 43 requires the defendant's presence at the voir dire examination of prospective jurors," in which during this stage the "prospective jurors are questioned about their knowledge of a specific case." *Id*. at 522 (citations omitted). The panel likened the trial judge's pre-venire excusal of jurors in this situation more akin to the voir dire stage, "because the prospective jurors knew which specific case they would hear, and some were excused due to factors related to Bordallo's particular cause," as opposed to a jury commissioner's "ministerial act" of drawing the jurors, which does not involve juror qualifications as related to a particular criminal case and to which "the defendant has no right to be present." *Id*. at 522-

11

23 (citing *Pope v. United States*, 287 F.Supp. 214 (W.D. Tex. 1967)). Despite concluding that the trial judge committed error, the circuit panel nonetheless concluded that the error was harmless. *Id*. at 523.

While both *Reyes* and *Bordallo* are binding on this Court, this Court finds those cases distinguishable from the present matter because those cases both dealt with the Court's questioning or excusal of jurors without the defendant's presence during voir dire or in a stage akin to the voir dire process. Here, on the other hand, this Court excused jurors due to hardship prior to voir dire and in a manner more analogous to the ministerial stage of drawing the prospective juror pool as referenced in *Bordallo*. *See Bordallo*, 857 F.2d at 523. Nothing suggests that Federal Rule of Criminal Procedure 43 contemplates or requires a Defendant to be present for the Court's *pre*-venire excusal of jurors based on hardship—in other words, for reasons other than their qualifications and suitability based on knowledge of the case. Other circuit courts in fact have held that the pre-venire excusal of jurors based on hardship does not violate Federal Rule of Criminal Procedure 43.

In *United States v. Moreland*, 703 F.3d 976, 982 (7th Cir. 2012), for example, the Seventh Circuit addressed the defendants' challenge to the district judge having excused several potential jurors in advance of voir dire based on them notifying the court of their hardships to serve on an estimated five-week trial given vacation plans, business commitments, or employment obligations. The defendants challenged the judge's excusal of those jurors as violating Federal Rule of Criminal Procedure 43(a)(2)'s requirement that a defendant be present at all stages of trial including jury impanelment. *Id.* However, the Seventh Circuit Court of Appeals there noted that the stages of the court issuing jury summons, potential jurors submitting responses including seeking excusal, and the

court taking action on those responses all occur before the jury venire is created and seated and *precede* jury impanelment. *Id*. (emphasis added). It reasoned that:

> Practicality dictates this conclusion. For what if a recipient of a jury summons replied to the court's jury administrator that he was hospitalized awaiting major surgery? Would the administrator's excusing him from jury service violate Rule 43? Anyway "a general qualification of the jury is not a "critical stage" in the proceedings. The court was merely deciding which jurors were to be excused for age, hardship, etc. It is difficult to see what the defendant could have added to this proceeding.

*Id*. at 983.

Likewise, in *United States. v. Greer*, 285 F.3d 158, 168 (2d. Cir. 2002), the Second Circuit addressed the defendants' challenge to the district judge excluding the parties and counsel from 30 in-chambers meetings with individual potential jurors regarding hardship excuses after the court announced the possible length of the trial but prior to announcing the case. After referencing Federal Rule of Criminal Procedure 43, the Second Circuit court noted that its circuit has "reaffirmed that hardship questioning is not a part of voir dire—and thus not a critical stage of the trial during which the parties and counsel must be present." *Id*. at 168. The court distinguished its current case at hand from the Ninth Circuit's *Bordallo*, given that there, the prospective jurors knew which case they would hear; however, here, the district court questioned the prospective jurors prior to announcing the case. *Id*.; *see Bordallo*, 857 F.2d at 523. The Second Circuit likened this situation more to a routine administrative procedure, to which it has previously held that "routine administrative procedures relating to jury selection are not part of the true jury impanelment process in which parties and counsel have a right to participate." *Greer*, 285 F.3d at 167-68. Accordingly, the court in *Greer* found no error. *Id*. at 168.

In reaching its decision, the Second Circuit in part relied on its prior decision in *United States v. Williams*, 927 F.2d 95 (2d. Cir. 1991), *cert. denied*, 502 U.S. 911 (1991), wherein the defendant challenged the practice of the jury clerk, rather than the trial judge, excusing prospective jurors on hardship grounds. The court there distinguished between "voir dire," where jurors are first introduced to the substantive factual and legal issues in a case, and the "administrative impanelment process," where jurors were not exposed to the substance of the case. *Id*. at 97.

Similarly, in *United States v. Contreras*, 108 F.3d 1255, 1269 (10th Cir. 1997), the Tenth Circuit court found that the district court did not commit error in excusing jurors based on undue hardship or bias prior to voir dire, reasoning that "[i]n fact, the Jury Selection and Service Act indicates the district court may properly exclude summoned jurors prior to voir dire based on hardship or bias."

This court's excusal of prospective jurors is more akin to the situations of those circuits. Notably, when jury summons were issued to 120 potential jurors, some responded by seeking excusals based on individual hardships or based on qualifying under one of the categorial excusals, and the Court granted some, but not all, requests upon recommendation from the jury administrator and in advance of trial. As summoned jurors began mailing in their responses to the Pre-qualifying Questionnaire for Jurors, wherein jurors were informed that trial could take up to four weeks, some of the summoned jurors responded "yes" to the question on if they sought to be excused based on serious hardship and provided explanations. The court excused jurors days prior to jury selection based on their responses to that question. To be clear, one distinction in this matter is that jurors knew what case they would be hearing, as the 120 summoned jurors were mailed the Pre-qualifying Questionnaire for Jurors in a manner as agreed to by the parties and which announced the basic facts of the case. But

14

other than the for-cause excusals based on the agreement of the parties and one upon request of the Defendant, the Court's excusal of potential jurors prior to voir dire were based on hardship given the expected length of trial. These potential jurors were excused not based on their knowledge or relation to the case, but rather based on scheduling or personal hardship irrespective of the facts of the case. Thus, the court's excusal of these jurors are more analogous to "ministerial acts" or the "routine administrative procedure" such that Federal Rule of Criminal Procedure 43 is not violated.

Furthermore, to the extent that this Court excused jurors based on good cause, the excusals were based on the stipulation of the parties or at the request of defense counsel after a review of the questionnaires. Defendant's mischaracterization that "[t]he Court has not allowed Defense Counsel to view the questionnaires of the large amount of exemptions selected by the Court" is completely false. (Reply at 3.) Counsel for both sides were emailed the responses of the Pre-qualifying Questionnaire for Jurors, which were the bases of which both sides were able to stipulate to jurors for excusal and to file their own list of excusals. (*See* ECF Nos. 388, 393-94.) Through this process, both parties were able to participate in the pre-venire excusal of jurors unlike in *Bordallo*. Both parties also agreed that the Court would make decisions of excusal based on the parties' filings. Yet Defendant alleges that the "Court unilaterally dismissed over one-third (1/3) of Defendant's jury pool without any input from Defendant or providing Defense Counsel with reasons for the Court's unilateral" excusal and argues that it was "not allowed to participate in the Court's decision to excuse these 43 potential jurors," thereby requiring the Court to declare a mistrial. (Mot. at 12-13.) Counsel for Defendant also declared that "[t]he actual names of the potential jurors the Court unilaterally excused is unknown as the Court has not given me the names of the individuals it excused and its reasons for

excusing them." (Phillips Decl. ¶ 15.) That the court made decisions unilaterally without input is clearly false and contradicted by the record.

If Defendant had alleged that the Court violated the Jury Selection and Service Act and sought an inspection, he may have been able to inspect the records related to the jury selection process. Such inspection is permitted under 28 U.S.C. § 1867(f), which allows the parties in a case to "inspect, reproduce, and copy" the records or papers used by the jury commission or clerk in connection with the jury selection process for the "preparation and pendency" of a motion challenging compliance pursuant to the procedures set forth in 28 U.S.C. § 1867. *See People of the Territory of Guam v. Palomo*, 511 F.2d 255, 258 (9th Cir. 1975). However, Defendant did not bring such a motion. Instead, Defendant's motion for a mistrial—which, to be frank, is devoid of any legal analysis—is based on speculation and uncertainty as to why jurors were specifically excused. Prior to moving for a mistrial, Defendant never inquired the Court for its reason for excusing the prospective jurors, except at the September 30, 2021 hearing, in which the Court informed counsel that it excused a few jurors based on hardship. To the extent that Defendant sought the Court's disclosure of its reasons for excusing jurors at the time of the motion, Defendant failed to cite to any authority, as the Government properly points out, requiring the Court to disclose its reasons for excusing jurors in order to proceed with voir dire and other for cause dismissals. (*See* Opp'n at 453.) Nonetheless, the Court did ultimately explain on the record at the motion hearing that other than those that the parties stipulated to for good cause, the Court excused jurors based on hardship pursuant to the Jury Selection and Service Act and this district's Jury Plan.

16

Finally, Defendant again relies on COVID-19 for a continuance of jury trial or as a basis for a mistrial. (Mot. at 1-2; Reply at 1-2.) However, the Court has repeatedly denied the motion given practices and measures taken at the District Court of Guam to mitigate the spread of COVID-19, and Defendant has failed to provide any new facts or change in the law warranting a reconsideration of the Court's prior denial. For the same reasons, Defendant's motion for a mistrial on the basis of COVID-19 is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIED Defendant's motion for a mistrial.

IT IS SO ORDERED this 9th day of August, 2022.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　RAMONA V. MANGLONA
　　　　　　　　　　　　　　　　　Designated Judge