# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK S. SMITH,<br><br>Defendant. | CRIMINAL CASE NO. 17-00020<br><br>**DECISION AND ORDER DENYING THE GOVERNMENT'S MOTIONS FOR RECONSIDERATION; AND CONDITIONALLY GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL** |

On June 3, 2022, the Court issued its decision and order granting in part Defendant Mark S. Smith's motion for judgment of acquittal, specifically as to the wire fraud charges (Counts 2 through 27) and conspiracy to commit wire fraud charge (Count 1). (Decision, ECF No. 656.) The Government subsequently moved for reconsideration of that decision. (Mot., ECF No. 661.) While the motion for reconsideration was pending, the Court issued a decision and order granting acquittal on Defendant's remaining seven counts. (Decision, ECF No. 675.) The Government then moved for reconsideration of that decision as well (Second Mot. Recons., ECF No. 677). For the following reasons, the Court denies both of the Government's motions for reconsideration.

## I. BACKGROUND

On December 8, 2021, a jury found Defendant Mark S. Smith guilty on 26 counts of wire fraud, 1 count of conspiracy to commit wire fraud, 1 count of theft of government property, 3 counts of money laundering, 2 counts of laundering of monetary instruments, and 1 count of conspiracy to

1

commit money laundering. (Verdict, ECF No. 561.) However, the Court granted Defendant's motion for judgment of acquittal as to Count 1 (Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1349 and 1343) and Counts 2 to 27 (Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2). (Decision, ECF No. 656.) Two months later, the Court acquitted Smith as to remaining seven counts—Count 28 (Theft of Government Property, in violation of 18 U.S.C. § 641), Count 29 (Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (h) and 1957), Counts 30, 33, and 34 (Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957 and 2), and Counts 38 and 45 (Laundering of Monetary Instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2). (Decision, ECF No. 675.)

Before the Court is the Government's motion for the Court to reconsider its June 3, 2022 decision granting Smith's motion for judgment of acquittal on the wire fraud and conspiracy to commit wire fraud charges, (Mot., ECF No. 661), and its August 26, 2022 decision granting Smith's motion for judgment of acquittal on the remaining seven counts (Second Mot. Recons., ECF No. 677.) The Defendant opposed both motions (Opp'n, ECF Nos. 666; Opp'n Second Mot. Recons., ECF No. 678), to which the Government filed a reply in support of the first motion only. (Reply, ECF No. 669.) The first motion was heard on September 2, 2022, at which time the Court took the matter under advisement to allow the Government to file a motion in response to the Court's second decision. (Criminal Mins., ECF No. 676.) The parties subsequently agreed to submit the second motion on the briefs without a hearing. (ECF Nos. 677, 678.)

///

///

## II. MOTIONS TO RECONSIDER

### A. Legal Standard

The Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration, but "'numerous circuit courts have held that motions for reconsideration may be filed in criminal cases.'" *United States v. Krug*, Case No. 09-cr-01148, 2013 WL 12216365, at *2 (C.D. Cal. Feb. 4, 2013) (quoting *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005)). "'[M]otions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings,'" which are the standards under Federal Rules of Civil Procedure 59(e) and 60(b). *United States v. Feathers*, Case No. 14-cr-00531, 2017 WL 783947, at *2 (N.D. Cal. Mar. 1, 2017) (quoting *United States v. Mendez*, Case No. 07-cr-00011, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008)).

Federal Rule of Civil Procedure 60(b) provides for relief from a judgment or order for specified reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

Guam's Local Rule of Civil Procedure 7(p) provides that motions for reconsideration may only be made on the grounds of 1) a material difference in fact or law that in exercise of reasonable diligence would not have been known, 2) emergence of new material facts or a change of law occurring after the time of such decision, or 3) "manifest showing of a failure to consider material facts presented to Court before such decision." Moreover, "no motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion except to the extent necessary to demonstrate manifest error." *Id*.

B. Discussion

The Government moves for reconsideration, arguing that: (1) the Court overlooked evidence that independently supports the jury's guilty verdicts on Counts 1 through 27, and (2) the Court erroneously concluded that Smith's misrepresentations regarding his conflict of interest do not support his convictions on Counts 1 through 27 because the information was not of economic value. The Court is unpersuaded by these arguments for the following reasons.

### 1. *The Court did not overlook evidence of the straw purchaser scheme that the Government claims supports the jury's guilty verdicts on Counts 1 through 27.*

First, the Government argues that reconsideration is warranted because the Court focused solely on Smith's false representations about his conflict of interest and wholly ignored Smith and Wong's "textbook straw purchaser scheme" involving Smith's purported transfer of properties to Wong in exchange for nominal consideration but retaining de facto ownership. (Mot. at 11.) The Government argues that these misrepresentations independently support a jury conviction for Counts 1 through 27. (*Id.*) But this misrepresentation only goes to the "means" to defraud for the first element of wire fraud: "First, the defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property *by means of false or fraudulent pretenses, representations, or promises, or omitted facts.*" (*See* Jury Instruction, ECF No. 557; Indictment ¶¶ 22-29.) And the means of the misrepresentation are not in dispute here. (*See* Opp'n at 2-4.) Rather, the issue is whether Smith and Wong's scheme targeted "money or property" within the ambit of the federal wire fraud statute. And the answer is no.

4

More debatable is the Government's argument that straw purchaser schemes inherently involve economic value because they by definition "deprive victims of a quintessentially economic part of their bargain: the fact that the victim is buying a service from (or extending a loan to, or whatever) a particular economic agent, with all the economic risk and calculus that accompanies the victim's acceptance of that particular (sham) actor as its business counterpart." (Mot. at 12.) But whether the HAP contracts were with Smith or Wong had nothing to do with economic risk – rather, the Government's concern was merely over whether there was a conflict of interest.

The Government relies on several Ninth Circuit cases to note that the Ninth Circuit has affirmed convictions under the federal wire, mail, and bank fraud statutes based on straw purchaser schemes. *See United States v. Miller*, 676 F.2d 359, 362 (9th Cir. 1982); *United States v. Lonich*, 23 F.4th 881, 890, 901 (9th Cir. 2022); *United States v. Viramontes*, 571 Fed. App'x. 613 (9th Cir. 2014) (unpublished); *United States v. Ball*, 711 Fed. Appx. 838, 842-843 (9th Cir. 2017).

The challenge for sufficiency of the evidence in *Lonich* dealt with bribery and obstruction of justice, not wire fraud or conspiracy charges. *Lonich*, 23 F.4th at 901-02. *Miller* is factually distinguishable as well because, there, the straw purchaser schemes of soon-to-be-foreclosed homes profited the defendant at the victims' detriment as their monthly mortgage charges greatly increased with the liquidation of their equity for the defendant's financial gain. *Miller*, 676 F.2d at 361. Here, the detriment to the victims, the United States Department of Housing and Urban Development ("HUD") and Guam Urban and Urban Renewal Authority ("GHURA"), is less apparent because they paid fair market value of rents for their Section 8 tenants; at trial, it was not demonstrated that Smith's rental properties were of lesser value than the charged monthly rents. Even if Smith was not the

5

landlord renting out his properties for these tenants, GHURA would still have paid another landlord the same (if not similar) HAP payments for the Section 8 tenants. Furthermore, *Viramontes* and *Ball* involved straw purchaser schemes for an unqualified person to take out loans. To be clear, loans inherently involve economic risk because money is given without any fair value of something given in return and with a future risk that the money would not be repaid. Where HAP payments are given in exchange simultaneously for fair rental units, any economic risk is not readily apparent.

   2. ***The Court did not err in concluding that Smith's misrepresentations do not support his convictions because the information was not of "economic value."***

Next, the Government argues that reconsideration is warranted because the Court's imposition of an "economic value" requirement was clear legal error. (Mot. at 13.) The Government argues that the Court's reading and application of *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992) was legally flawed, as the majority holding in *Bruchhausen* was much narrower. (*Id.* at 14, 16.) Specifically, the Government argues that the majority holding in *Bruchhausen* was merely that, "in the context of sales of tangible goods, a purchaser's false assurances about his intended use of the goods do not constitute property wire fraud because a seller has no 'property' interest in 'the disposition of goods it no longer owns.'" (*Id.* at 16 (quoting *Bruchhausen*, 977 F.2d at 468).) It argues that nothing in *Bruchhausen* suggests a sweeping proposition requiring misrepresentations of "economic value." (*Id.*)

The Government argues that because Judge Fernandez's concurrence in *Bruchhausen* rejected any broad proposition that a fraud is not committed when a monetary payment equal to the fair market value of the property is given, and Judge Kozinski joined the concurring opinion because he found the

6

two opinions entirely consistent, this means that the majority's holding must be more limited than the concurrence. (Mot. at 17.) But the Government's reliance on Judge Fernandez's concurrence is misplaced. As the Defendant properly notes (Opp'n at 5), the separate concurring opinion is not the law of the Ninth Circuit. *See Pub. Watchdogs v. S. Cal. Edison Co.,* 984 F.3d 744, 757 n.7 (9th Cir. 2020) (citation omitted) ("[C]oncurring opinions have no binding precedential value[.]"). The Government's attempt to elevate Judge Fernandez's concurrence to the status of a majority opinion fails. To the contrary of the Government's position, that very concurrence lends support that the majority holding required misrepresentation involving "economic loss." The concurrence makes clear where it departs from the majority.

> I also agree that the right of manufacturers to make decisions based on truthful information is far too ethereal to be a property right for the purposes of the wire fraud statute. . . .
>
> However, I do not agree that a person has not been defrauded of his property when he is induced by fraudulent representations to transfer that property to another. *In reaching the contrary conclusion, the majority puts far too much weight on the fact that the defrauded companies received a monetary payment equal to the fair market value of the property.*
> . . .
> Here the various sellers simply refused to sell to persons like Bruchhausen who intended to export equipment from the United States without permits. Indeed, at least one of them, Watkins–Johnson Co., required a certification that the property would stay in the United States, period. If a buyer would not certify to that, the company would not sell its goods to that buyer. When Bruchhausen lied in order to evade that condition, he did commit a fraud. That fraud was the obtaining of the property of another (the equipment) by means of false representations. *Thus, I cannot agree with the majority's conclusion* that Bruchhausen's behavior could not constitute a violation of the wire fraud statute.

*Bruchhausen,* 977 F.2d at 469-70 (Fernandez, J., concurring; Kozinski, J., joining) (emphasis added) (citations omitted). Surely, the majority was concerned that mere deception or inducement without any economic weight was insufficient to support a wire fraud conviction, especially in light of the recent U.S. Supreme Court decision *McNally v. United States,* 483 U.S. 350 (1987). *See Bruchhausen*, 977 F.2d at 468 (likening the finding in *McNally* that the "legitimate interest in preventing dishonest redistribution of commissions paid by the government did not qualify as 'property'" to its finding in *Bruchhausen* "that the interest of the manufacturers in seeing that the products they sold were not shipped to the Soviet Bloc . . . is not 'property'").

Nor does the Government's reliance on *United States v. Martin*, 612 F. App'x. 449, 450 (9th Cir. 2015) and *United States v. Harper*, 32 F.3d 1387, 1389 (9th Cir. 1994) help its position. The issue in *Martin* was an evidentiary challenge. *See Martin*, 612 F. App'x at 449. The issue in *Harper* dealt with the question of "loss" for purposes of sentencing. *Harper*, 32 F.3d at 1389. Judge Fernandez's own passing reference in *Harper* to his concurrence in *Bruchhausen* was merely dicta. Neither decision squarely addresses the issue of what constitutes property loss for purposes of a wire fraud conviction. This Court's June 3, 2022 decision is therefore not "irreconcilable" with those decisions.

Moreover, in issuing its decision, the Court did not rely merely on *Bruchhausen*. The Government wholly ignores the Court's reliance on precedential Supreme Court cases as well as a more recent Ninth Circuit case. (*See* Decision 12, 18 (first citing *Kelly v. United States*, 140 S.Ct. 1565 (2020); then citing *Skilling v. United States*, 561 U.S. 359 (2010); then citing *Cleveland v. United States*, 531 U.S. 12 (2000); then citing *McNally*, 483 U.S. 350; and then citing *United States v. Yates,* 16 F.4th 256, 267 (9th Cir. 2021)).)

Accordingly, the Government has not demonstrated clear legal error warranting reconsideration of the Court's June 3, 2022 decision and order.

### 3. The Court Denies the Government's Second Motion for Reconsideration

The Government filed its second motion for reconsideration "to allow the Court to harmonize its rulings on all counts prior to the filing of any notice of appeal." (Sec. Mot. Recons. 2.) The Government did not provide substantive argument in support of this second motion, and elected not to file a reply. As the Court previously stated, the remaining counts of money laundering survive only if the Government proved theft of government property. (Decision and Order Granting Acquittal on Def.'s Remaining Counts 3-4.) Because the Court denied the initial motion for reconsideration, which the second motion for reconsideration was dependent upon, the Court now DENIES the second motion for reconsideration.

## III. CONDITIONAL GRANTING OF A NEW TRIAL

### A. Legal Standard

Under Federal Rule of Criminal Procedure 29(d), "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed."

### B. Discussion

In its initial motion for judgment of acquittal or for a new trial, Defendant made arguments for a new trial on the bases that: (1) the defective property fraud theory based on the HAP payments tainted the jury's general verdict, (2) the prosecutor constructively amended the indictment in his closing argument by asserting legal-fees theory, (3) Instructions No. 19 and 20 were flawed and

9

undermined the mens rea, (4) Instruction 29 was permissive and erroneously one-sided and marshaled in favor of the Government, and (5) the instructions on omissions and duty to disclose (Instructions 16, 23, 24) were erroneous. (*See* Mot., ECF No. 622.) Having reviewed the briefs and considered the counsel's oral arguments, the Court conditionally grants Defendant's motion for a new trial if the Court's judgment of acquittal is reversed.

The general Instruction No. 19 (which applied only to Counts 1 through 28) instructed the jury for "Knowingly – Defined" that:

> An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident. <u>The government is not required to prove that the defendant knew that his acts or omissions were unlawful</u> . . . .
>
> This jury instruction does not apply to the offenses of engaging in monetary transactions with proceeds of specified unlawful activity charged in Counts 30, 33, and 34 of the indictment, and laundering of monetary instruments charged in Counts 38 and 45 of the indictment.

(ECF No. 557 at 20 (emphasis added).) Notably, when the Court was going through jury instructions, Defendant did not object to this second sentence in the instruction. (Tr. at 3260-62, ECF No. 601.) In Defendant's motion for judgment of acquittal, he argued that this instruction diluted the mens rea because wire fraud and theft of government property are specific intent crimes. (Mot. Acquittal 18-19, ECF No. 622.) The Government in response did not really make any arguments regarding Instruction 19.

Defendant is correct that wire fraud and theft of government property are specific intent crimes. *See United States v. Jinian*, 725 F. 3d 954, 960 (9th Cir. 2013), *as amended*, Jul. 23, 2013 (noting that wire fraud requires a "specific intent to defraud" and that "[t]he specific intent requirement is an aspect

10

Case 1:17-cr-00020   Document 684   Filed 12/16/22   Page 10 of 11

of the 'scheme to defraud' requirement; i.e., there is no fraudulent scheme without specific intent."); *United States v. Jones*, 607 F.2d 269, 273-74 (1979) ("The Government must prove specific intent as an element of the proof of a violation of [Section] 641. . . ."). "[B]y applying the later general instruction, . . . the instructions omitted an element of the offense as surely as if the district court had failed to mention the element altogether." *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994), *disapproved of by Roy v. Gomez*, 81 F.3d 863 (9th Cir. 1996). Furthermore, "[i]f jury instructions omit an element of the offense, constitutional error results because the jury has been precluded from finding each fact necessary to convict a defendant." *Id*. (internal quotation marks and citation omitted).

For this sole reason, the Court conditionally GRANTS Defendant's motion for a new trial. *See id.* (reversing conviction because error that jury instructions omitted an element of the offense is not harmless). The Court is unpersuaded by Defendant's other arguments for a new trial.

## IV. CONCLUSION

For the reasons set forth above, the Government's motions for reconsideration (ECF Nos. 661, 677) are DENIED. If the Court's judgment of acquittal is subsequently vacated or reversed by the Ninth Circuit Court of Appeals, the Court conditionally GRANTS Defendant's motion for a new trial on all counts.

IT IS SO ORDERED this 16th day of December, 2022.

_____
RAMONA V. MANGLONA
Designated Judge